In the Interest of M____ S____ M____, Mary ELMORE, Juvenile Officer, Respondent,

v.

S____ L____ M____, Appellant.

Nos. WD 34295, WD 35263.

Missouri Court of Appeals, Western District.

Jan. 10, 1984.

Motion For Rehearing and/or Transfer to Supreme Court Overruled and Denied Feb. 28, 1984.

Application to Transfer Denied April 16, 1984.

Don Witt (argued), Platte City, for appellant.

Max Von Erdmannsdorff, for Juvenile Officer, Kansas City, G.M. Mouse, for Natural Father, Independence, for respondent.

Before SOMERVILLE, P.J., and NUGENT and LOWENSTEIN, JJ.

NUGENT, Judge.

On October 7, 1982, after a hearing, the Juvenile Judge of the Clay County Circuit court declared M____ S____ M____, age twelve, a ward of the court and placed her in the custody of the juvenile officer and in the temporary custody of her natural father. On November 5, 1982, Mrs. S____ M____, the child's natural mother, filed a timely appeal (No. 34,295) contending that the court erred in denying her application for a change of judge.

On November 19, 1982, while her appeal to this court was pending, Mrs. M____ moved in the Circuit Court to modify the court's order of October 7 placing the child in the custody of the juvenile officer and her natural father. She requested a hearing on her motion. On November 23, 1982, the court denied the motion without hearing. On December 22, 1982, she appealed that order to the Missouri Supreme Court, asserting the unconstitutionality of § 211.-251(2) and Rule 121.01(b),[1] which permit the trial court to deny a motion to modify without hearing. Both appellant and respondents (the natural father, J____ M____, as well as the juvenile officer) moved the Supreme Court to transfer that appeal to this court. That court ordered the transfer to us, and we numbered that case WD 35,263, consolidating the two cases for submission.

We now affirm the judgment of the trial court making M____ S____ M____ a ward of the court and placing her in the custody of the juvenile officer and her natural father, and we affirm the trial court's denial of appellant's motion to modify.

This case originated on September 23, 1982, when the juvenile officer filed a petition alleging that M____ S____ M____, a girl,

age twelve, was neglected in that her older brother had on numerous occasions sexually molested her but that her parents, although they knew of the abuse, had failed to take appropriate action to protect the child.

At the time the petition was filed, the hearing was set for October 7, and summons was issued. Mrs. M____ was served on Tuesday, September 28. On Wednesday, October 6, her counsel entered his appearance and applied for a change of judge. On that same day, the trial court denied her application because she had failed to comply with Rule 51.05 and Clay County Circuit Court Rule 6.

On October 7, 1982, the court held an evidentiary hearing on the issues raised in the petition. Mrs. M____ appeared with her counsel, participated and testified.

The evidence showed that M____ S____ M____ had told her brother's girlfriend that for a number of months her brother Michael had been coming into her room late at night and sexually using her. Upon learning of this, Mrs. M____ on May 8, 1982, called the child abuse hotline. Clay County Family Services investigated and confirmed the child's story. Connie Cooper, the investigating social worker, told the county juvenile officer of the matter but did not refer it for juvenile court action because the child had moved from her mother's house to her father's. She told the parents, however, that the girl and her brother were not to live in the same house and that both needed counseling. The parents agreed and took seventeen-year-old Michael to a psychologist to begin a counseling program.

Jodie Summers, another social worker, then undertook to make sure that the youngsters received counseling and were kept apart. She soon learned that the girl had moved back to her mother's house at the end of May, her brother having moved out. Mrs. M____ reported to Ms. Summers on June 22, however, that she thought that

---

**1.** The "Rules" referred to are the Missouri Rules of Civil Procedure. All sectional references are · to Revised Statutes of Missouri, 1978.

her son would be moving back to his mother's house. When pressed, Mrs. M____ admitted that he had in fact moved back on June 18. His sister was still living there. Ms. Summers then arranged for the girl's father to take her to live in his home.

The social worker and the counselors who saw Mrs. M____ and her son and offered counseling services to the family testified that the mother acknowledged her children's need for counseling but never followed through to see that they got it. Both Mrs. M____ and her son complained of a lack of transportation.

The counselors testified that the brother broke appointments or failed to appear for counseling on most occasions. He thought that he did not need counseling. Both counselors terminated him.

On July 23, M____ S____ M____ again moved back to her mother's house, although the social worker did not learn of that development until July 30. Upon inquiring about the brother's residence, she received conflicting reports from the mother, the boy and the boy's friend. She realized that he too had returned home to live. Mrs. M____ explained that he was "her son too" and she could not kick him out. The mother also admitted that since their return she had left the brother and sister alone together.

Mrs. M____ also testified that, in addition to having problems controlling her son Michael, she had difficulty controlling two of her other sons. She ascribed those troubles to the fact that they were teenagers.

The trial judge concluded that the brother, for his own selfish purposes, had manipulated his mother at her and her daughter's expense. He expressed his belief that Mrs. M____ had enought to do with the problems she already had with her children and his doubt that brother Michael was willing or able to cooperate in a rehabilitation program. He ordered M____ S____ M____ placed in her father and step-mother's home with full visitation rights for mother and daughter so long as brother Michael was not present.

## Case No. WD 34,295

Appellant first contends that, because she timely applied for change of judge under Rule 51.05, the trial court erred in denying the application. Alternatively, she contends that the court erroneously applied the law in denying her application because she was allowed only two days to request a change of judge instead of five days.

To request a change of judge in a juvenile case, Rule 126.01 requires a party to apply pursuant to Rule 51.05. So far as here relevant, that rule provides:

(b) The application must be filed at least thirty days before the trial date or within five days after a trial setting date has been made, whichever date is later, *unless* the trial judge has not been designated within that time, in which event the application may be filed within ten days after the trial judge has been designated or at any time prior to trial, whichever date is earlier. (Emphasis added.)

Mrs. M____ argues that she timely applied because she filed her application within ten days after receiving notice of the trial judge's designation. Her argument incorrectly assumes that the latter portions of Rule 51.05(b) apply in this case. They do not. Only the initial provisions of Rule 51.05(b) apply here because the summons issued on September 23 first designated the trial judge and then set the hearing date of October 7.

Appellant does not dispute the fact that the summons designated the trial judge at that time, as the local rules of the Clay County Circuit Court require that all juvenile cases be assigned to Division Two, the Honorable R. Kenneth Elliott presiding. The September 23 summons served on September 28 did that.

Thus, because the trial judge had been designated, Rule 51.05(b) required appellant to apply for a change of judge "at least thirty days before the trial date or within five days after a trial setting date had been made, whichever is later." *See Natural Bridge Development Co. v. St. Louis County Water Co.*, 563 S.W.2d 522,

525 (Mo.App.1978); *State ex rel. B\_\_\_\_ C\_\_\_\_ C\_\_\_\_ v. Conley,* 568 S.W.2d 605, 608 (Mo. App.1978). Obviously, appellant could not have applied thirty days before the trial. Thus, she had to apply "within five days after a trial setting date had been made," that is, within five days of the issuance of the summons in this case.

Rule 44.01(a) dictates methods for computing periods of time prescribed by the rules. It reads as follows:

(a) Computation. In computing any period of time prescribed or allowed by these rules, by order of court, or by any applicable statute, the day of the act, event, or default after which the designated period of time begins to run is not to be included. The last day of the period so computed is to be included, unless it is a Saturday, Sunday or a legal holiday, in which event the period runs until the end of the next day which is neither a Saturday, Sunday nor a legal holiday. When the period of time prescribed or allowed is less than seven days, intermediate Saturdays, Sundays and legal holidays shall be excluded in the computation.

■ Applying these computation rules and the literal language of Rule 51.05(b) to this case, the last day on which appellant could have applied was Thursday, September 30. The trial date of October 7 was set on September 23. Because the requisite time period is less than seven days, the weekend of September 25–26 must be excluded in computing the five days. Appellant thus could have applied for a change of judge any time up to and including Thursday, September 30. She sought change on October 6, which was not even within ten days after the trial setting date, much less within five days after the "trial setting date" required by the literal language of Rule 51.05(b).

■ In determining whether a party has applied on time, however, we may consider something other than the literal language of a statute or rule governing obtaining a change of judge. *Hodges v. Oberdorfer Motors, Inc.,* 634 S.W.2d 205, 207 (Mo.App. 1982); *Jenkins v. Andrews,* 526 S.W.2d

369, 373 (Mo.App.1975). Thus, appellant suggests that in this case the time period for applying should run from the date summons was served rather than from the "trial setting date" as the literal language of the rule requires. But even if she were allowed five days from the time she was served, September 28, rather than from the "trial setting date," September 23, appellant would have had to apply by October 5. She filed her application on October 6. Thus, appellant applied for a change of judge too late even under this less than literal interpretation of the rule.

■ The mother next urges us to allow her *ten days* after service of process in which to file her application. That argument ignores the plain language of the rule which provides that the ten-day rule does not apply unless the trial judge was not designated within five days after the "trial setting date." While the rule allowing a party to disqualify a judge should be liberally construed in favor of the right to disqualify, *In re Estate of Boeving,* 388 S.W.2d 40, 50 (Mo.App.1965), the court must weigh the effect of liberalizing such a rule on the rights of the various parties and the type of proceeding involved.

■ In a juvenile court matter such as this, time is of the essence, and the court must proceed as speedily and as promptly as possible. *See* Rule 119.01. Indeed, Rule 51.05(a) gave appellant a right to a change of judge, but she had to apply on time. *In re Matter of Buford,* 577 S.W.2d 809 (Mo.1979) (en banc). In the present case, where the juvenile had been removed from her home and was being detained by the juvenile court and where appellant received a summons on September 28th designating the judge and telling her that on September 23 the trial date of October 7 had been set, we believe that the rule should not be liberalized to the extent that appellant urges. She asks us to extend the counting date from the "trial setting date" (September 23) to the date on which she was served (September 28) *and* to extend the time period from five days to ten days.

Assuming, arguendo, that we had the authority to do so, the facts of this case simply do not warrant such a liberalization. The trial court did not err in denying Mrs. M\_\_\_\_'s October 6 application for a change of judge.

■ Appellant's second point on this appeal, that the trial court erroneously applied the law in allowing her only two days from service of process to apply for change of judge, must also fail in this case. Appellant posits the following situation wherein a party would have no right to apply for a change of judge.

A petition is filed in juvenile court more than ten days prior to the hearing and at the time of the filing of the petition the case is set for hearing and the judge designated. Service is effected on the custodian before the hearing. (Rule 115.01(d) allows personal service on a custodian to be effected as late as twenty-four hours prior to the time set for hearing.)

The custodian could not possibly file his application within five *or* ten days after the trial date had been set and the judge designated. This then would seem to be a situation in which the rules should indeed be so liberally construed as to allow the custodian to file "at any time prior to trial." Rule 51.05(b).

The facts of the case at bar, however, require no such liberalization of the rule. Mrs. M\_\_\_\_ can hardly complain that she was allowed only two days from her receiving notice when she did not file until the sixth day after receiving notice, one day before trial.

We conclude that the trial court had jurisdiction to proceed with the case. The trial court's denial of the mother's motion for change of judge being the only question raised on this appeal we affirm that court's October 7, 1982, judgment.

### Case No. WD 35,263

In this case, Mrs. M\_\_\_\_ originally appealed to the Supreme Court of Missouri on two grounds. First, she asserted that § 211.251(2) and Rule 121.01(b) unconstitu-tionally permit a court to deny a parent due process of law in that they authorize a court in its discretion to deny without hearing a parent's petition to modify an order committing a child to the custody of an institution or agency. Second, Mrs. M\_\_\_\_ claimed that the trial court's denial was an erroneous application of the law, which she claims to be another denial of due process.

In the Supreme Court before argument appellant abandoned her contention that § 211.251(2) and Rule 121.01(b) were unconstitutional and moved to transfer this case to this court. Respondents filed similar motions, and on September 12 the court granted the transfer. At oral argument before us, appellant reiterated her abandonment of that claim of unconstitutionality. The case is before us, therefore, only on appellant's second point, and that not being a question within the exclusive jurisdiction of the Supreme Court, we may decide it.

Mrs. M\_\_\_\_ contends that "[s]ince Section 211.251(2) is the only statutory access a parent has to the Trial Court after disposition, the Court must, in accordance with due process, allow the parent a hearing and opportunity to present evidence." She further argues that the provision in § 211.-251(b) permitting the court to deny a hearing on a motion to modify "should apply only when all parties agree to placement or when a child is removed from a more restrictive environment to a less restrictive environment."

Appellant cites no authority for those propositions. Rather, she relies upon *Kipper v. Vokolek*, 546 S.W.2d 521 (Mo.App. 1977), and *In re A\_\_\_ N\_\_\_*, 500 S.W.2d 284 (Mo.App.1973). She acknowledges that those cases were about motions in which the courts granted the moving party relief without notice to or a chance to be heard by the other party, distinguishing them from this case. A more important difference between these cases, however, is that here the statute specifically authorized the juvenile judge in his discretion to decline to hear evidence on the mother's motion. That distinction is decisive.

In *Kipper* and *In re A___ N___,* neither court had the authority to deny an evidentiary hearing on the motions before them. In fact, in the latter case this court held that the juvenile court had failed to comply with the command of § 211.211 which explicitly directs that, before the court may commit any juvenile to a training school, the child "shall have the opportunity to have and be represented by counsel at a hearing held for that purpose." In *Kipper* the question arose out of the failure to notify the wife or afford her a chance to be heard before the court modified a divorce decree and ordered a change of custody of the minor children from the mother to the father. No statute authorized that court to proceed in that way.

 The real question in this case is whether the juvenile court abused the discretion given to it by § 211.251(2). The answer lies in an understanding of the circumstances. The juvenile officer's petition and the evidence indicated that the child was neglected in her mother's home where she had been sexually abused. After the October 7 hearing, the court placed the child in her father's home, away from her molester. Six weeks passed. The mother then moved for modification on the grounds that the threat to the girl was gone, that she wanted to return to her mother and that placement outside her mother's home was not in the child's best interests.

This motion to modify came only a few weeks after the child had been removed from the mother's home in which she had been molested. The evidence amply supported a conclusion by the trial court that appellant either would not or could not control her son, that she was unwilling to keep him out of her house even when his sister was living there. Moreover, the clear implication of the evidence was that appellant lacked any real interest in continuing counseling for either of these children. Finally, the court correctly concluded that Mrs. M____ already had more than she could handle with her other children.

Under such circumstances, we believe that the juvenile judge properly exercised his discretion in refusing to afford Mrs. M____ a hearing on her motion to modify. She was not denied due process of law.

For the foregoing reasons, we affirm the action of the trial court in denying Mrs. M____ a hearing on her motion to modify the October 7, 1982, judgment.

All concur.

