857 S.W.2d 835 (1993)
In the Interest of N.D., N.E.D. and V.D., Minors.
JUVENILE OFFICER, Respondent,
v.
B.J.D., Natural Mother, Appellant.
No. WD 45691.
Missouri Court of Appeals, Western District.
March 30, 1993.
Motion for Rehearing and/or Transfer Denied June 1, 1993.
Application to Transfer Denied August 17, 1993.
*836 Elton W. Fay, Grimes, Fay & Gaeth, Columbia, for appellant.
Elizabeth K. Magee, Jean Goldstein, Hindman, Scott, Goldstein & Harder, Columbia, for respondent.
Before KENNEDY, P.J., and BRECKENRIDGE and HANNA, JJ.
Motion for Rehearing and/or Transfer to Supreme Court Denied June 1, 1993.
BRECKENRIDGE, Judge.
B.J.D. (Mother) appeals the decision of the juvenile court terminating her parental rights to her three youngest children, N.D., N.E.D. and V.D., pursuant to § 211.447, RSMo Cum.Supp.1992.[1] Mother raises five points on appeal alleging that the juvenile court erred in (1) denying Mother's motion for visitation with the three youngest children; (2) denying Mother visitation with her three youngest children without a hearing when the Division of Family Services (DFS) decided not to allow visitation; (3) refusing to admit into evidence Mother's Exhibit A; (4) terminating Mother's parental rights because the decision of the court was against the weight of the evidence; and (5) terminating Mother's parental rights because DFS failed to strictly comply with statutory provisions and agency guidelines. The judgment is affirmed.
This case involves numerous court proceedings, both criminal and civil, and almost two decades of records kept by DFS. Only those facts necessary for the disposition of this appeal will be set forth. B.J.D. is the mother of eight children. The termination proceedings at issue concern only the three youngest children, but all eight children are mentioned in the evidence. N.D. (Father) is not the father of Mother's oldest child but is the father of the other seven children. The following is a list of all eight children, their dates of birth and sex: T.P., September 4, 1971, female; L.P., March 22, 1973, female; D.V.D., April 10, 1975, female; R.D., July 23, 1976, male; Q.D., April 17, 1979, female; N.D., October 24, 1983, male; N.E.D., June 21, 1985, female; and V.D., November 17, 1986, female.
*837 Child abuse allegations in the home of Mother and Father were first investigated in June of 1975 when L.P. sustained severe burns to her body while in the care of Father. As a result of the burns and other scars found on the children, T.P., L.P. and D.V.D. were removed from the home of Mother and Father in August of 1975. The children were returned to Mother late in 1976. Father has been in and out of the home since 1975 due to incarceration and marital problems. On June 10, 1979, Mother filed a report with DFS and the Columbia Police Department alleging that Father had sexually abused T.P., but dropped the charges in July of 1979.
All eight children were removed from the home on April 12, 1988 and both parents were arrested and charged with crimes against T.P., D.V.D. and R.D. On April 13, 1988, an order of protective custody and an order prohibiting contact between the children and their parents were issued by the judge of the juvenile division of the circuit court. The next day, petitions were filed alleging that all eight children were in need of care and treatment of the juvenile court.
On October 6, 1988, Mother was convicted of three counts of felony child abuse and sentenced to seven years imprisonment. On October 28, 1988, Father was convicted of three counts of child abuse, two counts of rape, one count of sodomy and one count of sexual assault and sentenced to 105 years imprisonment. On appeal, his sentence was reduced to 95 years.
On October 13, 1988, Mother filed a Motion to Establish Visitation. On February 23, 1989, the court ruled on Mother's motion and retained the "no contact" order as to the three youngest children. Mother was allowed supervised visitation with the older children. These visits took place nine times in 1989, five times in 1990 and five times in 1991. All five older children did not attend every visit.
All eight children were adjudicated on September 26, 1989, to be under the jurisdiction of the juvenile court pursuant to § 211.031. On November 14, 1989, the court ordered that supervised visitation between Mother and the three youngest children could occur as recommended by DFS. Visitation with the three youngest children was never allowed by DFS because DFS felt it was not in the best interest of the children. DFS withheld visitation because Mother denied that she or Father had abused any of the children, Mother behaved inappropriately during visits with the older children in which she accused them of lying, and blamed them for her incarceration, and Mother refused to accept responsibility for the abuse. Mother repeatedly asked DFS to schedule a visit for her with the three youngest children and on June 26, 1990, she filed a Motion Requesting Visitation. The court denied the motion on September 19, 1990 and her notice of appeal was filed on October 16, 1990. Oral arguments were heard on September 17, 1991. This court found that the order was not a final order for purposes of appeal and dismissed Mother's appeal for lack of jurisdiction. In Interest of N.D., 819 S.W.2d 790 (Mo.App.1991).
Subsequent to the filing of the appeal but prior to oral argument, petitions to terminate the parental rights of Mother and Father as to the three youngest children were filed on January 31, 1991. The three petitions were consolidated for hearing. The Juvenile Officer did not seek to terminate the parents' rights with regard to the five older children. Father consented to the termination of his parental rights under the petitions, and orders terminating his rights were entered. After hearing evidence on the petitions against Mother, the juvenile court found that the older children had informed Mother that Father was physically and sexually abusing them but Mother did nothing to protect the children. The court also found that Mother physically abused the children by whipping them with switches, a belt and an extension cord. N.E.D., one of the female children at issue in this case, told counselors details of physical contact with Father indicating Father had sexually abused her. N.D., the male child at issue in this case, described incidents to his counselors indicating that he had been physically abused by both parents. Mother's parental rights as to the three youngest children were terminated *838 by the juvenile court on November 26, 1991. She filed a timely appeal from such orders.
Mother raises five points on appeal. These points will not be discussed in numerical order. The court will first address the three points regarding termination and then discuss the two regarding visitation.
Mother asserts in her Point III that the juvenile court erred in terminating her parental rights to the three youngest children because the court failed to admit into evidence Mother's Exhibit A and thus failed to consider such evidence in making its decision. Exhibit A was a section from the Alternative Care Manual of the DFS Handbook entitled "Serving the Incarcerated Parent," which Mother offered into evidence on several different occasions during the hearing. The court sustained the Juvenile Officer's relevancy objection each time and refused to admit Exhibit A.
Mother sought to introduce Exhibit A as the DFS guidelines and procedures applicable to her case. Janeene Johnston, a DFS caseworker, testified that the manual did not apply to this case because neither parent was incarcerated at the time the children were removed from the home. She testified the manual was applicable only to a parent incarcerated at the time DFS removed his or her child from the care of the non-incarcerated parent or when it was necessary to notify an incarcerated parent that the child's foster care arrangement had been changed.
Mother's witness, Jim Harrison, was a fourteen-year employee of DFS who currently holds the position of Program Development Specialist for the Department of Social Services. Mr. Harrison testified that written notice to the incarcerated parent, provided for in Exhibit A, "may be a moot issue" when the parents know the children have been removed from the home. He also indicated that notice does not have to be provided in writing and may be given verbally.
Evidence is relevant if it tends to prove or disprove any fact in issue or if it tends to corroborate any other relevant evidence. Reed v. Rope, 817 S.W.2d 503, 510 (Mo.App.1991). The determination of whether offered evidence is relevant is largely committed to the discretion of the trial court. Id. Whether the admission or rejection of evidence results in prejudicial and reversible error is not an issue on appeal in any case tried by a judge without a jury. City of Town & Country v. St. Louis County, 657 S.W.2d 598, 608 (Mo. banc 1983); Eagle v. Swanger, 787 S.W.2d 806, 808 (Mo.App.1990). Even if it was reviewable on appeal, Mother has not shown that prejudice sufficient to reverse resulted from the rejection of Exhibit A, due to the fact that other evidence elucidated the applicable policies and procedures of DFS. Point III is denied.
In Point IV, Mother argues that the juvenile court's decision to terminate her parental rights was against the weight of the evidence because the court disregarded medical and nonmedical testimony proving that termination was not in the best interest of the children. In a court-tried action, the judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence or it erroneously declares or applies the law. Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976); In Interest of M.L.W., 788 S.W.2d 759, 762 (Mo.App.1990). On appeal, the court will review the facts in the light most favorable to the trial court's judgment. T.S. v. P.S., 797 S.W.2d 837, 840 (Mo.App.1990).
The best interest of the child is the court's utmost concern in deciding whether to terminate parental rights. In Interest of J.M., 815 S.W.2d 97, 101 (Mo. App.1991). The Juvenile Officer must prove that grounds for termination under § 211.447 exist by clear, cogent and convincing evidence. In Interest of M.B., 768 S.W.2d 95, 97 (Mo.App.1988). In the context of a parental rights termination proceeding, clear, cogent and convincing evidence means "evidence that instantly tilts the scales in favor of termination when weighed against the evidence in opposition and the finder of fact is left with the abiding conviction that the evidence is true." In Interest of J.M., 815 S.W.2d at 101.
*839 The Juvenile Officer sought termination of Mother's parental rights under § 211.447.2(2)(c). Termination under this statutory provision is authorized upon proof of:
A severe act or recurrent acts of physical, emotional or sexual abuse toward the child or any child in the family by the parent, including an act of incest, or by another under circumstances that indicate that the parent knew or should have known that such acts were being committed toward the child or any child in the family
There is clear, cogent and convincing evidence to support the juvenile court's finding that termination is in the best interest of the three youngest children.
In 1979, Father began sexually abusing T.P. Mother was aware of such abuse because T.P. told her repeatedly of the abuse. Mother's knowledge of the abuse was evidenced by the fact that she informed T.P.'s doctor in 1979 that T.P. had been sexually abused. Mother did nothing, however, to prevent Father from having access to T.P. or any of the other children during the next nine years. During this time, Father continued to sexually abuse T.P., and also sexually abused L.P. and D.V.D. A year before the children were removed from her home, the older children en masse told Mother that Father was sexually abusing the three oldest girls. Mother confronted Father, but when he denied it, she did nothing. There is also evidence that Father may have sexually abused N.E.D., who was not quite three when placed in DFS custody.
The evidence shows physical abuse beginning in 1975, when L.P. sustained second degree burns on her body while she was left by Mother in the care of Father. DFS investigated whether Father had deliberately burned L.P. During that investigation, Mother admitted that she had physically abused two-year-old T.P. and three-year-old L.P. by spanking them with a belt and a switch, that she sent them to their room for a period of two days at a time, and that her discipline had left strap marks on L.P.'s body which were still visible a month later.
Upon the removal of her children by DFS in 1975, Mother received counseling. Despite this counseling, Mother continued to physically abuse the older children to the point of leaving scars by beating them with various items such as an extension cord, switches and a belt. Father's beatings were even more severe and, in addition to the items used by Mother, he used a hanger and a ping pong paddle to strike the children. Two of the children testified they were beaten about once a week. One child testified that, "[S]ometimes we would have to whoop each other. And if we didn't hit each other the way they wanted us to, then we would get whooped again." N.D. was four and N.E.D. was two when they were removed from the home in 1988. One older child testified that before their removal Mother "hit on [N.D. and N.E.D.] a lot." N.D. himself reported to counselors that he was physically abused by Mother and Father.
Mother was convicted in a separate criminal proceeding on three felony counts of abuse of a child. Mother is currently serving a seven year prison sentence for that conviction, unless she was paroled while this appeal was pending. Father was convicted of six felonies resulting from sexual and physical abuse of the older children. He is currently incarcerated pursuant to his sentence of 95 years imprisonment.
Mother argues that she presented evidence showing that termination would not be in the best interest of the children. Mother asserts that the juvenile court ignored the testimony of her witnesses and in doing so erred because the testimony shows that terminating her parental rights was not in the best interest of her three youngest children. Mother, besides her own testimony, presented the testimony of a civic volunteer, two Boone County employees and several relatives who testified that she was a good, caring mother; that her children were happy and contented; and that she was a polite, pleasant person. She also presented the testimony of Dr. Barbero, an expert in the field of gastrointestinal disease and cystic fibrosis, who was the children's physician. Dr. Barbero *840 testified that he had not seen evidence that the children were physically or sexually abused during his examinations of them, although his records did show that Mother had advised him that T.P. had been sexually abused; that the children were clean and well-behaved when they visited his office; and that it is his professional belief that children should not be separated from their mother without visitation.
It is the trial court's responsibility to evaluate the credibility of the witnesses, and in doing so, the trial court can choose to accept or reject all, part or none of the testimony of any witness. R.D. by Reine v. I.D., 778 S.W.2d 848, 850 (Mo.App.1989). Deference to the trial court on the issue of witness credibility is particularly important and appropriate when the parent is before the court, because intangible factors such as abilities and attitude can best be judged by the trial court. Id. at 851. On appeal, this court will also defer to the trial court's decisions regarding conflicting evidence. T.S. v. P.S., 797 S.W.2d at 840. The trial court had the best opportunity to assess the demeanor and credibility of the witnesses. This court will not disturb the juvenile court's ruling since it was not against the weight of the evidence and is supported by substantial evidence. Point IV is denied.
In Point V, Mother asserts that the juvenile court erred in terminating her parental rights because she was not afforded statutory protection due to the failure of DFS to strictly and literally comply with statutory provisions and agency guidelines.
Mother's first argument under Point V is unrelated to compliance with statutes and DFS guidelines. She argues that the Juvenile Officer failed to prove by clear, cogent and convincing evidence that she knew or should have known of the abuse. The sufficiency of the evidence was addressed under Point IV and ruled against Mother.
Mother next argues that termination is not mandatory even if the Juvenile Officer proves the statutory grounds for termination by clear, cogent and convincing evidence. Mother is correct. The juvenile court has discretion in determining whether termination of parental rights is in the best interest of a child, with the preference being to preserve the parent-child relationship. See D.G.N. v. S.M., 691 S.W.2d 909, 912 (Mo. banc 1985). The juvenile court in exercising its discretion whether to terminate a parent's rights must evaluate and make findings on seven factors enumerated in § 211.447.3, if appropriate and applicable to the case. The juvenile court complied with the statute and made findings as to factors (1), (2), (4), (5), (6) and (7). The juvenile court did not make a finding as to factor (3), because it was not applicable. The juvenile court strictly complied with the statutory provisions by evaluating the factors in § 211.447.3 before finding that the children's best interest would be served by terminating Mother's parental rights.
Mother contends throughout her argument that DFS did not follow its own guidelines and failed to offer her adequate services to improve her parenting skills so that her family could be reunified. Termination of parental rights is an exercise of awesome power and requires strict and literal adherence to the statute. In Interest of W.F.J., 648 S.W.2d 210, 214 (Mo.App.1983). There is no statutory right, however, to a certain level or standard of DFS treatment and services in a termination proceeding. In Interest of M.L.W., 788 S.W.2d at 763; See also In re Interest of A.L.B., 743 S.W.2d 875, 881 (Mo.App.1987). The failure of DFS to provide treatment or services to a parent is not a valid defense for use by the parent in a termination proceeding. In Interest of J.M., 815 S.W.2d at 102.
DFS guidelines are written in broad general terms to aid DFS workers. Even though the guidelines are not mandatory, DFS followed the guidelines in the case at hand when they were applicable. The only requirement of the guidelines with which DFS did not comply was that specifying the procedure for a written case plan bearing Mother's signature. On numerous occasions, however, Mother was orally informed by DFS workers that she was expected to admit the abuse, take responsibility *841 for it and cease accusations that her children had caused her incarceration by lying in court. Mother's attorney attended all case planning meetings held by DFS. This court held in In Interest of J.M., 815 S.W.2d at 102-03, that failure on the part of DFS to formulate a written case plan is not a defense in a termination proceeding when DFS has worked diligently in other respects to facilitate reunification. There is ample evidence showing that DFS provided services to Mother and worked to achieve reunification of Mother's family.
Inherent in Mother's argument is the assertion that the evidence does not support the court's finding that additional services would not accomplish the reunification of Mother with her three youngest children in an ascertainable period of time. The juvenile court's specific finding under § 211.447.3(4) was that:
Additional services are not likely to bring about lasting parental adjustment enabling the juveniles to return to [Mother] given:
a. The pattern of abuse, counseling and further abuse;
b. The denial of any abuse; and
c. The unwillingness of [Mother] to sign a release between her counselors and the juveniles and their siblings [sic] and halfsibling's counselors so that meaningful counseling could occur.
The juvenile court had before it the evidence previously recited in this opinion. In addition, the juvenile court interviewed all eight children in chambers. D.V.D., L.P. and T.P, the three oldest female children, expressed concern for the safety of the three youngest children if they were returned to the home and care of Mother. L.P. was opposed to the three youngest children being returned to Mother's custody. T.P. was skeptical about Mother's ability to care for the three youngest children properly. Both L.P. and T.P. stated their belief that Mother, even with counseling and parenting classes, has not changed over the four years since the children were removed from the home and that she continues to deny that any abuse took place and to blame her children for her incarceration. T.P. expressed her fear that Mother is not emotionally strong enough to sever contact with Father, whether he is incarcerated or not, and that the safety and wellbeing of the three youngest children would be further jeopardized if the children were returned to Mother.
Although Mother has completed parenting classes and participated in counseling both before and during her incarceration, her attitude regarding the abuse has not changed. The trial court found that even with additional counseling and services there is little likelihood that the children will ever be able to return to Mother's care. Termination of Mother's parental rights will finally allow these children to be adopted and hopefully achieve a stable home environment to replace the abuse and instability they have endured in their young lives up to this point. Reunification of the family is the desired outcome of DFS involvement but the best interest of the child takes priority over reunification. In the Interest of J.Y., 637 S.W.2d 670, 673 (Mo. banc 1982). Mother has failed to develop adequate parenting abilities during the nearly seventeen years since her children were originally removed from her care. There is no evidence to indicate that additional time and services would bring about lasting adjustment of Mother's attitudes and behavior. Point V is denied.
Mother raises two points on appeal regarding denial of her repeated requests for visitation with the three youngest children. In Point I, Mother claims that the juvenile court erred in denying her visitation with the three youngest children because the Juvenile Officer failed to prove by clear, cogent and convincing evidence that visitation would be harmful to the three youngest children and would not be in the best interest of the children. In Point II, Mother argues that her Fourteenth Amendment Due Process rights were violated because the decision whether to permit her to have visitation was delegated by the juvenile *842 court to DFS and she was denied a hearing prior to DFS's denial of her requests for visitation with the three youngest children.
Mother filed an original appeal from the juvenile court's denial of her Motion Requesting Visitation. The juvenile court's order which Mother sought to appeal was in substance an order denying modification. Mother sought to modify the court's previous order of custody so she would be allowed specific visitation rights. Under the court's previous order, Mother was permitted visitation with her three youngest children only as DFS recommended. This court in In Interest of N.D., 819 S.W.2d 790 (Mo.App.1991), found that because a petition for termination of Mother's parental rights was pending, the order denying visitation did not dispose of all the issues in the case.[2] The court dismissed Mother's first appeal upon a finding that the court lacked jurisdiction since the order was not final for appeal. Id.
Section 211.261, RSMo1986, permits a parent to appeal "from any final judgment, order or decree made under the provisions of this chapter which adversely affects him."[3] The standard for a "final" judgment in a juvenile matter differs from that under general civil law. The very nature of a juvenile proceeding entails an on-going case which does not result in a "final" order, as that term is generally defined. The juvenile court's exercise of continuing jurisdiction over a child, however, does not defeat a right to appeal. See In Interest of M.S.M., 666 S.W.2d 800 (Mo. App.1984).
Pursuant to § 211.261, RSMo1986, a parent is entitled to appellate review of an adverse ruling on a parent's petition for modification of an order of custody under § 211.251.2. In Interest of M.S.M., 666 S.W.2d 800, was decided before In Interest of N.D. and involved an appeal of the denial of a motion to modify the trial court's custody order without a hearing. Although the trial court's order was upheld, this court allowed the appeal of a motion to modify. In In Interest of R.D., 842 S.W.2d 560, 560-61 (Mo.App.1992), decided after In Interest of N.D., this court held that an order overruling a motion for rehearing on the court's prior order denying the parents visitation was a final and appealable order. The parents' motion for rehearing in In Interest of R.D. and Mother's motion requesting visitation are analogous because, although titled differently, they both are motions seeking modification of a juvenile court's custody order denying visitation.
The decisions in In Interest of M.S.M., 666 S.W.2d 800, and In Interest of R.D., 842 S.W.2d at 560, permit a parent to appeal from an order denying a motion for modification of a prior order of custody.[4] In light of this court's decisions in In Interest of M.S.M. and In Interest of R.D., this court reconsiders its decision in In Interest of N.D. and finds it to be in conflict. The facts of this case, the pendency of the petition for termination, are insufficient justification to distinguish this case from In Interest of R.D. and In Interest of M.S.M. There is no connection between the issues in the denial of visitation and the petition for termination of parental rights sufficient to require that they be combined in a single appeal. The rights at stake are significant and the best interest of children is served by resolving juvenile matters promptly, particularly when the effect of the order sought to be appealed is to deny contact between a parent and child. In Interest of M.S.M., 666 S.W.2d at 804.
*843 Immediate review of the denial of Mother's motion is authorized by statute and there appears to be no legal rationale to require deferral of such appellate review until an appeal of the court's decision on the petition to terminate parental rights. Accordingly, this court recants its holding in In Interest of N.D. and states that In the Interest of R.D. is the correct statement of the law.[5]
As directed by the court in In Interest of N.D., 819 S.W.2d at 791, Mother raises specific claims of error in the juvenile court's denial of her Request for Visitation in her Points I and II. A question presented to the court for decision which will have no practical effect upon any then existing controversy is moot. Kracman v. Ozark Elec. Co-Op., Inc., 816 S.W.2d 688, 690 (Mo.App.1991). Resolution by the court of the assertions of error Mother raises regarding visitation would not have any effect or impact, given the termination of Mother's parental rights. The issues in Mother's Points I and II, therefore, are moot. As a result, this court will not address the merits of Mother's claims of error in the juvenile court's denial of her motion for visitation. Points I and II are denied.
The judgment of the trial court is affirmed.
All concur.
NOTES
[1] All statutory citations are to Revised Missouri Statutes Cumulative Supplement 1992, unless otherwise indicated.
[2] The Juvenile Officer filed the petition to terminate Mother's parental rights subsequent to the court's denial of her Motion Requesting Visitation.
[3] Rule 120.01 sets forth the same right to appeal for a parent. Rule 120.01(b) states that "an appeal shall be allowed to a parent from any final judgment made under the Juvenile Code which adversely affects him."
[4] Although the existence of a parent's right to appeal was not a point specifically raised in either In Interest of M.S.M. or In Interest of R.D., both cases permit such an appeal and In Interest of R.D. expressly recognizes a right to appeal.
[5] The court recognizes the finality of an order denying modification of an order of custody when such motion has been adjudicated by the juvenile court for purposes of appeal and does not address the docketing of such matters if they are pending simultaneously before the juvenile court.