

# MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | |
|---|---|
| IN THE INTEREST OF: P.D.E., | ) |
| | ) WD84899 |
| Appellant, | ) |
| v. | ) OPINION FILED: |
| | ) |
| JUVENILE OFFICER, | ) November 22, 2022 |
| | ) |
| Respondent. | ) |
| | ) |

**Appeal from the Circuit Court of Callaway County, Missouri**
**Honorable Sue Murvin Crane, Judge**

**Before Division One:**
**Janet Sutton, P.J., Alok Ahuja and Karen King Mitchell, JJ.**

P.D.E. appeals a judgment of the Callaway County Circuit Court in which the court found P.D.E. delinquent for committing the offenses of burglary in the second degree, trespassing in the first degree, and two counts property damage in the second degree. P.D.E. contends that he did not "knowingly and voluntarily" admit to the conduct alleged in the Juvenile Officer's amended four-count petition. Because P.D.E.'s notice of appeal was untimely filed, we would ordinarily dismiss the appeal. However, because we recognize that there is a reasonable basis for disagreement as to when the disposition order is final for purposes of appeal, and this issue is of general interest or importance, we do not finally dismiss P.D.E.'s appeal, but instead, on our own motion transfer this case to the Supreme Court of Missouri for decision pursuant to Rule 83.02.

## Factual and Procedural Background

In December 2020, the Juvenile Officer filed a petition alleging that P.D.E. committed the delinquency offenses of two counts of burglary in the second degree, one count of property damage in the first degree, and one count of property damage in the second degree. The Juvenile Officer's petition, with an accompanying probable cause statement, alleged that in November 2020, P.D.E., along with other several others, entered two different church buildings in Holts Summit, Missouri, and destroyed church property at both locations.

The following month, on the day of P.D.E.'s scheduled adjudication hearing, the Juvenile Officer filed an amended petition, alleging that P.D.E. committed second-degree burglary, first-degree trespass, and two counts of second-degree property damage.[1] The court adjudicated P.D.E. as delinquent and in need of care and treatment under section 211.031.1(3) on January 26, 2021.[2] The court held P.D.E.'s disposition hearing on March 2, 2021.

The court issued P.D.E.'s disposition order the same day as his disposition hearing. In the disposition order, the court ordered that P.D.E. be made a ward of the court, placed P.D.E. in his mother's custody under the Juvenile Officer's supervision, and listed conditions in the disposition order including, among other things, that P.D.E. was "to pay restitution in an amount to be determined."

Four months after the disposition order, the court held a restitution hearing on

---

[1] The Juvenile Officer's amended petition alleged in the third count that P.D.E. "in violation [of] [s]ection 569.100 . . . committed the class A misdemeanor of property damage in the second degree . . . . " However, section 569.100 provides for property damage in the first degree, with the possibility of the offense being charged as a class E, D, or B felony.

[2] All statutory references are to RSMo 2016 as supplemented.

2

July 13, 2021, to determine the exact amount owed. Later, on October 6, 2021, in a docket entry, the court set P.D.E's restitution amount at $4,000.00. P.D.E. filed his notice of appeal on October 19, 2021, stating "[t]he trial court's order directing Appellant to pay $4000 in restitution is unlawful and unreasonable."[3]

P.D.E. appeals the adjudication hearing and disposition order, arguing that he did not "knowingly and voluntarily" admit to the four amended counts in the Juvenile Officer's petition. The Juvenile Officer contends that because P.D.E. untimely filed his notice of appeal, we do not have jurisdiction to hear the appeal.

## Legal Analysis

Before considering the merits of an appeal, "'we must *sua sponte* determine whether we have authority to do so.'" *Juv. Officer v. A.S.M.*, 423 S.W.3d 824, 829 (Mo. App. W.D. 2014) (quoting *In re G.G.B.*, 394 S.W.3d 457, 461–62 (Mo. App. E.D. 2013)). The Missouri Constitution article V, section 5, empowers the legislature "'to set the requirements for the right to appeal.'" *In re D.E.G.*, 601 S.W.3d 212, 216 (Mo. banc 2020) (quoting *Goldsby v. Lombardi*, 559 S.W.3d 878, 883 (Mo. banc 2018)). Thus, "[t]he right to appeal is purely statutory and, where a statute does not give a right to appeal, no right exists." *D.E.G.*, 601 S.W.3d at 216; *See also* Rule 120.01.[4]

"Chapter 211 . . . governs all proceedings brought in juvenile court." *In re K.S.W.*, 454 S.W.3d 422, 426 (Mo. App. W.D. 2015) (citing *In re A.R.*, 330 S.W.3d 858, 862 (Mo. App. W.D. 2011)). Under section 211.261.1, a notice of appeal must be "filed

---

[3] P.D.E. did not file any post-trial motions within the thirty-day period after judgment entry as permitted by Rule 119.02.

[4] All rule references are to the Missouri Supreme Court Rules, unless otherwise indicated.

within thirty days after the final judgment, order or decree has been entered . . . ." That appeal time period is extended ten days by the application of Rule 81.04 ("notice of appeal shall be filed not later than ten days after the judgment, decree, or order appealed from becomes final[]") and Rule 81.05(a) ("[a] judgment becomes final at the expiration of thirty days after its entry if no timely authorized after-trial motion is filed."). *See In re D.J.B.*, 704 S.W.2d 217, 218 (Mo. banc 1986) (holding Rules 81.04 and 81.05(a) apply and supersede any part of section 211.261 inconsistent with those rules).

Section 211.261 authorizes an appeal from "any final judgment, order or decree made under the provisions of this chapter[.]" But chapter 211 "contains no definition of 'final judgment[.]'" *D.J.B.*, 704 S.W.2d at 218. A "final judgment" in a juvenile matter "differs from that under general civil law. The very nature of a juvenile proceeding entails an on-going case which does not result in a 'final' order, as that term is generally defined." *In re N.D.*, 857 S.W.2d 835, 842 (Mo. App. W.D. 1993).[5] The court's continuing authority over the juvenile's care and treatment, though, "does not defeat a right to appeal." *Id.*

> Generally, a final judgment disposes of all issues in the case and leaves nothing for future determination. *In re C.A.D.*, 995 S.W.2d 21, 26 (Mo. App. W.D.1999). However, the standard for a "final" judgment in a juvenile proceeding differs from this general standard. *Id.* The nature of a juvenile proceeding requires an on-going consideration, *which does not result in "final" disposition of the issues as the term is traditionally defined. Id.* Instead, once a disposition is made concerning the juvenile, even though post-dispositional hearings may continue to be held, all the issues before the court have been disposed of and nothing is left for determination. *Id.* Therefore, a dispositional order is final and

---

[5] Rule 74.01(a) does "not apply to dispositional orders in juvenile cases." *In re J.N.W.,* 643 S.W.3d 618, 627 (Mo. App. W.D. 2022) (citation omitted).

4

appealable. *Id.*

*In re M.P.R.*, 381 S.W.3d 392, 393 (Mo. App. E.D. 2012) (emphasis added); *See also K.S.W.*, 454 S.W.3d at 427–28.

Section 211.181 dictates, after adjudication and at disposition, that the court shall make findings of fact upon which it exercises jurisdiction over the child. Rule 128.03 provides that the court shall enter an order determining both "the legal and physical custody of the juvenile" and what placement, treatment or care should be ordered. *See also K.S.W.*, 454 S.W.3d at 426–27.

As part of the disposition, section 211.181.3(7)[6] permits a court to order the juvenile to make "restitution or reparation for the damage or loss caused by [a juvenile's] offense." Not only may a court order restitution in the disposition order, but the court may hold a hearing "to ascertain the amount of damages." Section 211.181.3(7). Section 211.181 does not say, however, that the disposition order remains pending until the conclusion of the restitution hearing. Section 211.181 instead contemplates that the court may decree and order restitution with a separate process for later hearing on the specific amount owed.

Section 211.185, which governs the process for a court when entering a judgment of restitution against a parent and a juvenile, also contemplates a separate restitution hearing apart from a final, appealable disposition order. Section 211.185.6 permits a

---

[6] Section 211.181.3(7) provides, in pertinent part:

> In determining the amount or extent of the damage, the court may order the juvenile officer to prepare a report and may receive other evidence necessary for such determination. The child and his or her attorney shall have access to any reports which may be prepared, and shall have the right to present evidence at any hearing held to ascertain the amount of damages.

court to hold a restitution hearing "not later than thirty days after the disposition hearing and may be extended by the court for good cause." Neither statute alters the appealability of disposition orders.[7]

The court entered its disposition order on March 2, 2021, and this constituted a final, appealable judgment. P.D.E.'s appeal was due, at the latest, by Monday, April 12, 2021, forty days after the disposition order.[8] P.D.E. filed his notice of appeal on October 19, 2021, over six months late, making P.D.E.'s appeal untimely.

Though the court waited until July 2021 to hold a restitution hearing and did not order the final restitution amount until October 6, 2021, the earlier disposition order settled that P.D.E. would pay *some amount* to be determined. The disposition, ordered under section 211.181, contemplated restitution and stated, "[P.D.E.] to pay restitution in an amount to be determined." With restitution ordered, the disposition order was final on March 2, 2021.

The court's docket entry on October 6, 2021, was denominated an "order" and set forth the exact restitution amount that the court found P.D.E. should pay. This *final* order as to the restitution amount would constitute a separate appealable "order" under section 211.261.1. P.D.E., however, is not appealing the reasonableness of the specific

---

[7] Sections 211.185 states, in pertinent part,

> 1. In addition to the court's authority to issue an order for the child to make restitution or reparation for the damage or loss caused by his offense as provided in section 211.181, the court may enter a judgment of restitution against both the parent *and the child* pursuant to the provisions of this section . . . .

and that "[t]he court may order both the parent *and the child* to make restitution." § 211.185.2 (emphasis added).

[8] *See* Rule 44.01(a) ("The last day of the period so computed is to be included, unless it is a Saturday, Sunday or a legal holiday, in which event the period runs until the end of the next day which is neither a Saturday, Sunday nor a legal holiday.").

6

restitution amount.  Though P.D.E.'s notice of appeal stated he expected to raise the issue that "[t]he trial court's order directing [P.D.E.] to pay $4000 in restitution is unlawful and unreasonable[,]" neither P.D.E.'s brief nor his point relied on mention this issue.  Since P.D.E. is appealing the substance of the adjudication and disposition hearings, P.D.E. should have brought his claims on appeal from the date of final judgment—the disposition order date.

Finally, we emphasize that the juvenile statutes and Missouri Supreme Court Rules do not solidify disposition orders once issued.  Rather, both the legislature and the Missouri Supreme Court recognize that courts may amend or modify disposition orders at any time on either the court's own motion or a party's motion.  § 211.251; Rule 119.03.

The dissent argues that the legislature's change to section 211.261.2, which took effect August 28, 2021, and authorizes interlocutory appeals to the "[p]arent, guardian ad litem, or juvenile officer from any order changing or modifying the placement of a child," shows the legislative intent to extend the right to appeal only in these circumstances without a final judgment in place.  This argument presupposes that the dispositional order in this case was not final for appeal purposes.  Yet this amendment was not in effect at the time of P.D.E.'s disposition order.

Had the amendment been in effect, it would not have granted a right to interlocutory appeal in this case.  First, the amendment does *not* grant the right of interlocutory appeal to the juvenile.  Second, it applies only to orders *changing or modifying the placement of the child.*  In the case before us, the disposition order did not change or modify placement of P.D.E, making this amended portion of the statute

7

inapplicable to him. So again, if the disposition order is not deemed final for purposes of appeal, then juveniles like P.D.E. would be left without a right to appeal and languishing until the court decided the restitution amount.

As stated by this court in *In re C.A.D.*, "the on-going nature of juvenile proceedings . . . require post-dispositional review hearings to be held at least annually." 995 S.W.2d at 27. "[O]nce a disposition is made concerning the juvenile, even though post-dispositional hearings may continue to be held, all the issues before the court have been disposed of and nothing is left for determination." *M.P.R.*, 381 S.W.3d at 393. Thus, disposition orders are "final" even when a later post-disposition hearing is required to calculate a restitution amount.

> Rule 110.02 provides that the Juvenile Court Rules shall be construed to conduce to the welfare of the juvenile and the best interests of the state. The promotion of the best interest and welfare of the child is the primary consideration in custody cases in juvenile court. Custody issues should be disposed of as expeditiously as possible because they involve young developing children. . . Such cases implicate the fundamental right of parents to rear their children free from government interference. Delay in determining whether the custodial arrangement will be continued is detrimental to the best interests of the child and does not conduce to the welfare of the juvenile and the best interests of the state.

*C.A.D.*, 995 S.W.2d at 27 (citations omitted). Should we follow the dissenting opinion, we would only further delay the juvenile's ability to appeal a disposition order, including physical custody determinations. Disposition orders empower courts to "make findings concerning the legal and physical custody of the juvenile" including placing juveniles in the Division of Youth Services (D.Y.S.). *M.P.R.*, 381 S.W.3d at 394; § 211.181.3(3). If we require the juvenile to wait for appeal until the court determines a restitution amount for a disposition order to be final and appealable, then we would delay appeal of such possible D.Y.S. custodial determinations for an

8

indeterminate amount of time. This position does not comport with the goal of expeditious hearing and review in juvenile matters.[9]

## Conclusion

Because P.D.E.'s notice of appeal was untimely filed, we would dismiss the appeal. However, because we recognize that there is a reasonable basis for disagreement as to when the disposition order is final for purposes of appeal, and this issue is of general interest or importance, we do not finally dismiss P.D.E.'s appeal, but instead, on our own motion transfer this case to the Supreme Court of Missouri for decision pursuant to Rule 83.02.

_____
Janet Sutton, Presiding Judge

Karen King Mitchell, Judge, concurs.
Alok Ahuja, Judge, dissents in a separate opinion.

---

[9] The court could have placed P.D.E. in D.Y.S. custody, because the court found that P.D.E. was in need of care and treatment under section 211.031.1(3). See § 211.181. P.D.E. also waited over seven months for the court to order the specific restitution amount. If we agree, as the dissent concludes, that the disposition order language "in an amount to be determined" meant the court did not finalize the disposition order, then P.D.E. could have been placed with D.Y.S. and he had no ability to appeal his D.Y.S. custody for seven months.

9



# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| IN THE INTEREST OF P.D.E., | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | **WD84899** |
| | ) | |
| JUVENILE OFFICER, | ) | **FILED: November 22, 2022** |
| Respondent. | ) | |

## DISSENTING OPINION

In my view, the circuit court did not enter a complete and final disposition in this delinquency proceeding until it determined the amount of restitution it would order P.D.E. to pay. Because P.D.E. timely appealed following the circuit court's entry of an order which fully and finally resolved all dispositional issues, I respectfully dissent from the majority's dismissal of his appeal.

## Factual Background

The circuit court entered an order adjudicating P.D.E. to be delinquent under § 211.031.1(3)[10] on January 26, 2021. Following a dispositional hearing, the circuit court entered an Order of Disposition on March 2, 2021. The circuit court's Order specified among other things that P.D.E. was to attend school; submit to random drug testing; attend programming directed by his supervising Deputy Juvenile Officer; participate in mental health services; and perform community service.

Although the circuit court's March 2 Order specified various dispositional measures, the Order made clear that the full consequences for P.D.E.'s delinquent

---

[10]     Unless otherwise noted, statutory citations refer to the 2016 edition of the Revised Statutes of Missouri, updated by the 2020 Cumulative Supplement.

behavior had not yet been resolved:  the Order specified that P.D.E. was to "pay restitution *in an amount to be determined*."  (Emphasis added.)

Following a further hearing on July 13, 2021, the circuit court entered an order on October 6, 2021, specifying that P.D.E. should pay restitution of $4,000.00.

P.D.E. filed his notice of appeal on October 19, 2021.  On appeal, he challenges the circuit court's underlying adjudication of delinquency, which was based on his purported admission of the offenses alleged by the Juvenile Officer.

## Discussion

P.D.E. was not required to appeal until the circuit court entered a "final" order resolving the Juvenile Officer's delinquency petition.  Under § 211.261.1, a child may appeal "from any final judgment, order or decree made under the provisions of" chapter 211.  As the majority notes, "finality" in the context of juvenile proceedings is interpreted differently than in other civil cases, because "[t]he very nature of a juvenile proceeding entails an on-going case which does not result in a 'final' order, as that term is generally defined." *In re N.D.*, 857 S.W.2d 835, 842 (Mo. App. W.D. 1993).  *N.D.* holds that "[t]he juvenile court's exercise of continuing jurisdiction over a child . . . does not defeat a right to appeal." *Id.*

Although the juvenile court's continuing jurisdiction may not defeat appellate jurisdiction, § 211.261.1 itself expressly requires that a judgment or order must be "final" in order to be appealed.  In abuse and neglect and delinquency proceedings, this Court has explained that "finality" requires that the circuit court have entered a complete dispositional order.

> [The] judgment "shall include the disposition or treatment of the juvenile."  Once a disposition has been made, all the issues before the juvenile court have been disposed and *nothing has been left for future determination*, and the judgment is final and appealable.  This is so . . . notwithstanding the on-going nature of juvenile proceedings which require post-dispositional review hearings . . . .

2

*In re C.A.D.*, 995 S.W.2d 21, 27 (Mo. App. W.D. 1999) (emphasis added; citations omitted); *see also*, *e.g.*, *K.S.W. v. C.P.S.*, 454 S.W.3d 422, 427 (Mo. App. W.D. 2015); *In re M.P.R.*, 381 S.W.3d 392, 393 (Mo. App. E.D. 2012) (a juvenile court judgment may become "final" for purposes of appeal "once a disposition is made concerning the juvenile, even though post-dispositional hearings may continue to be held").

Although juvenile matters may be distinguishable from other civil actions due to the circuit court's continuing jurisdiction over the child and their family, *C.A.D.*'s definition of a "final" judgment is quite similar to the definition otherwise applicable in civil actions. In other civil matters – as in juvenile delinquency proceedings – a judgment can only be considered "final" and appealable where it "leav[es] nothing for future determination." *Boley v. Knowles*, 905 S.W.2d 86, 88 (Mo. 1995); *see also, e.g., Estate of Jenkins v. Jenkins*, 648 S.W.3d 137, 139 (Mo. App. W.D. 2022) ("'For a judgment to be final and appealable, it must dispose of all issues and all parties in the case and leave nothing for future determination.'" (citation omitted)).

Thus, even though a juvenile court may exercise ongoing supervision of a juvenile and his or her family, an order is appealable if it determines whether a juvenile comes within the court's jurisdiction, and specifies the remedial measures to which the juvenile and his or her family will be subject, leaving "nothing . . . for future determination." The circuit court's March 2, 2021 Order of Disposition does not satisfy this standard. The Order, on its face, left dispositional matters for "future determination": the Order specifically states that P.D.E. would be required to "pay restitution *in an amount to be determined*." (Emphasis added.)

By explicitly leaving restitution for determination in the future, the circuit court failed to finally determine P.D.E.'s disposition, and its order was accordingly not immediately appealable. An order of restitution is as much a part of P.D.E.'s disposition as an order taking custody of P.D.E., or an order requiring him to

3

perform community service, attend school or other programming, or submit to drug testing. *See* § 211.181.3(1) to (9) (specifying the dispositional measures the circuit court is authorized to order, including a home or relative placement; commitment to a Division of Youth Services facility of placement in a foster home; medical treatment; suspension of driving privileges; community service; _or_ "[o]rder[ing] the child to make restitution or reparation for the damage or loss caused by his or her offense"). The majority opinion itself acknowledges that an order of restitution is "part of the disposition" in a delinquency proceeding. Maj. Op. at 5 (citing § 211.181.3(7)). To refer to the circuit court's determination of the amount of restitution as a "post-disposition" issue, Maj. Op. at 8, is a misnomer – deciding the amount of restitution which P.D.E. was required to pay was as much a part of the "disposition" as the order that he be made a ward of the court subject to the Juvenile Officer's supervision.

The majority opinion notes that the Juvenile Code separately authorizes a restitution judgment to be entered against the delinquent child and their parents. Notably, in _that_ context, the statute plainly contemplates a proceeding independent of the adjudication and disposition of the delinquency petition involving the child. Thus, although § 211.185.7 permits the hearing on a restitution claim to be "held as part of an adjudicatory or disposition hearing for the child," the statute only requires that the restitution hearing be conducted "not later than thirty days after the disposition hearing." § 211.185.6. Moreover, the statute provides for entry of a "judgment of restitution" separate from the resolution of the delinquency petition against the child – a judgment which may be enforced "in the same manner as enforcing monetary judgments," and which may be executed against the child after they reach age 18. §§ 211.185.7, .8, .11. The different treatment specified for an independent restitution judgment against the delinquent child and their parents only reinforces that a restitution order entered against the juvenile under § 211.181

4

is part of the disposition in a delinquency proceeding, which must be finally resolved before an appeal is taken. *See Spire Mo., Inc. v. Mo. Pub. Serv. Comm'n*, 607 S.W.3d 759, 772 n.3 (Mo. App. W.D. 2020) ("It is a settled canon of statutory construction that, where different language is used in the same connection in different parts of an act, it is presumed that the legislative body intended different meaning and effect.") (citations and internal quotation marks omitted)).

It is well-established that, where a general civil judgment expressly reserves an issue for future determination (like the judgment here), that judgment is <u>not</u> final or appealable until the reserved issue is fully and finally resolved. "[A] judgment that requires external proof or another hearing to dispose of disputed issues involved in the litigation is not final for the purposes of [appeal]." *In re Trust of Bornefield*, 36 S.W.3d 424, 426 (Mo. App. E.D. 2001); *see also Comm. for Educational Equality v. State*, 878 S.W.2d 446, 450 (Mo. 1994) ("[A] judgment that disposes of only one of several remedies and leaves other remedies relating to the same legal rights open for future adjudication is not a final judgment."). For cases finding a lack of finality where issues concerning the amount of a defendant's financial liability remained unresolved, *see, e.g., Estate of Jenkins*, 648 S.W.3d 137, 139-40 (Mo. App. W.D. 2022) (dismissing appeal of probate judgment where the probate court dismissed over 95% of a probate claim, "except [the Funeral Expense,] which shall be set for hearing on June 23, 2021 at 10:30 a.m."); *Flower Valley, LLC v. Zimmerman*, 575 S.W.3d 497, 503 (Mo. App. E.D. 2019) (judgment in judicial review proceeding not final where, "[a]lthough the trial court found Respondents were entitled to such [attorney's] fees, the court stated the amount awarded would be determined at a later date"); *Team, Inc. v. Schlette*, 814 S.W.2d 12, 13-14 (Mo. App. E.D. 1991) (judgment which found defendant liable for breach of contract, but reserved determination of plaintiff's damages, was not appealable despite trial

5

court's certification of its liability ruling as a partial final judgment under Rule 74.01(b)).

The principle that a judgment is not final where the _amount_ of a litigant's liability is unresolved should apply equally here. The March 2, 2021 Order of Disposition is functionally identical to the judgments in the cases cited above – it expressly states that P.D.E. would be subject to a financial liability, but in an indeterminate amount. Until the amount of P.D.E.'s liability for restitution was resolved, no final dispositional order had been entered in his case. The circuit court's judgment was not final until the court's October 6, 2021 order specifying a restitution amount; P.D.E.'s notice of appeal filed on October 19, 2021, was accordingly timely (indeed, it was premature). In his appeal, P.D.E. was entitled to raise issues concerning not only the October 6 restitution order, but also concerning the circuit court's underlying adjudication of delinquency, and its imposition of other dispositional measures, in the March 2, 2021 Order, since the March 2 Order was merely interlocutory until made final on October 6.

I recognize that, in juvenile cases, courts have a special interest in reaching a prompt and final resolution. Although the majority opinion requires a juvenile to file an _earlier_ notice of appeal, it is not clear that the decision will actually promote judicial efficiency. To the contrary, the majority opinion may simply result in the filing of multiple appeals: one to challenge the court's adjudicatory decision and any dispositional measures the court originally imposes; and then a second (or third, or fourth) appeal to challenge additional dispositional measures which are imposed later. The better course, in my view, is to adhere to the standards for finality stated in prior cases: the circuit court's dispositional order must leave "nothing . . . for future determination" in order to be appealed. _In re C.A.D._, 995 S.W.2d at 27. A juvenile court's order must specify a full, complete disposition, listing all consequences imposed on the juvenile for the underlying conduct, in order

to be considered "final" and appealable under § 211.261.1. Although finality is not defeated simply because the disposition is subject to later modification or review, a full and complete initial disposition is nevertheless required.

The majority expresses concern that, if we do not denominate the March 2, 2021 order as "final" and appealable, this might delay appellate review of orders placing a juvenile in State custody, while other dispositional matters remain unresolved. Section 211.261.1 unambiguously requires a "final judgment, order or decree," however, and we have no authority to disregard this finality requirement, no matter how benevolent our motives. As the Supreme Court observed when enforcing other limits on the right to appeal under § 211.261, it is up to the legislature to decide when an appeal can be taken in juvenile proceedings: "[t]he right of appeal is statutory. . . . Notwithstanding this Court's desire to avoid holdings in which a trial court's judgment is unreviewable, this Court cannot invade the General Assembly's province to create a right of appeal where none exists." *J.I.S. v. Waldon*, 791 S.W.2d 379, 379 (Mo. 1990) (citation omitted). Moreover, besides authorizing an appeal of "any final judgment, order or decree," § 211.261.1, the General Assembly has also authorized interlocutory appeals in certain circumstances. Among other things, effective August 28, 2021, interlocutory appeals are allowed to the "[p]arent, guardian ad litem, or juvenile officer from any order changing or modifying the placement of a child." § 211.261.2(2), RSMo Cum. Supp. 2021. Although the majority is rightfully concerned that juveniles may languish in custody with no right to appeal an incomplete dispositional order, the General Assembly has addressed this issue, in the manner it deemed appropriate, by permitting interlocutory appeals of orders affecting a juvenile's placement in certain circumstances, by certain parties. We cannot supplement (and alter) the legislative design by "creat[ing] a right of appeal where none exists." *J.I.S.*, 791 S.W.2d at 379.

7

## Conclusion

Because P.D.E. timely appealed once the circuit court's dispositional order was "final", I respectfully dissent from the majority's dismissal of his appeal. I agree with the majority that it is appropriate to transfer this case to the Supreme Court to allow it to finally resolve this jurisdictional question, and I appreciate my colleagues' willingness to do so.

Alok Ahuja, Judge