995 S.W.2d 21 (1999)
In the Interest of: C.A.D. Plaintiff,
Missouri Department of Mental Health, Appellant,
v.
Juvenile Officer, Respondent.
No. WD 55872.
Missouri Court of Appeals, Western District.
June 30, 1999.
*23 Susan Ford Robertson, Guardian ad Litem, St. Louis, for plaintiff.
Beth S. Riggert, Asst. Atty. Gen., Jefferson City, for appellant.
Elizabeth K. Magee, Columbia, for respondent.
Before JOSEPH M. ELLIS, Presiding Judge, HAROLD L. LOWENSTEIN, Judge and VICTOR C. HOWARD, Judge.
ELLIS, Judge.
The Missouri Department of Mental Health[1] (hereinafter "the Department") appeals from a judgment from the Boone County Family Court awarding legal custody of C.A.D. to the Department.
C.A.D., a twelve-year-old boy, began receiving mental health services at age five. C.A.D.'s parents separated in 1987 and divorced in 1989. Since that time, C.A.D. and his older sister have lived with their mother and her male companion. The father died in February 1998. C.A.D. has a history of aggressive and violent behavior, dating back to 1991.
In July 1991, C.A.D. was hospitalized at the Children's Hospital of St. Louis for two weeks where he was diagnosed with Oppositional Defiant Disorder and Attention Deficit Hyperactivity Disorder. In early August 1991, after C.A.D. began to *24 act aggressively toward family members, his family began participating in Families First Intervention.[2] In 1994, C.A.D.'s case was transferred from the Child Development Unit to the Mid-Missouri Mental Health Center's Children's Outpatient Unit. As a result of continued behavioral problems, C.A.D. began Child Day Treatment in December 1994 and remained in the program until May 1996. At that time, C.A.D. returned home and resumed his outpatient care.
In August 1996, C.A.D. allegedly committed three counts of third degree misdemeanor assault in violation of § 565.070.[3] In response, the juvenile officer filed a petition with the family court to make C.A.D. a ward of the Court in the custody of the mother and under the supervision of the juvenile officer. On October 23, 1996, C.A.D. ingested several prescription medications in an apparent suicide attempt. Later that day, C.A.D. stood inside a ring of gasoline, which he ignited to prevent rescue personnel from reaching him. The next day, the family court ordered C.A.D. to undergo a mental evaluation, pursuant to § 211.202. C.A.D. was admitted to the Mid-Missouri Mental Health Center (hereinafter "MMHC") and was released into therapeutic foster care on November 22, 1996. On the day of his release, C.A.D. was found to be within the jurisdiction of the family court pursuant to § 211.031.1(3)[4]. After C.A.D. made a successful adjustment to his new school, his mother scheduled an Individual Education Plan meeting to discuss C.A.D.'s possible return to his former school. Based on the positive reports from his foster home, personnel from C.A.D.'s former school appeared receptive to his return. In hopes of having her son return home, C.A.D.'s mother cooperated with his counselors by developing a behavioral chart for him and adjusting her schedule to provide more parental supervision.
On January 31, 1997, Ed Guinn, the guardian ad litem, filed a motion for a change of placement. On February 7, 1997, the family court ordered that C.A.D. be placed with his mother for a sixty-day trial home placement. During that time, the Department continued to provide case management services. On two occasions, the family court reviewed the trial home placement and extended the home placement for another sixty days with continued individual and family therapy. The court order also required C.A.D. to be accompanied throughout the school day by either his mother or an employee of the Department.
In September 1997, C.A.D. committed third degree misdemeanor assault of a law enforcement officer in violation of § 565.083. As a result of this offense and disruptive classroom behavior, the juvenile officer filed a motion requesting that the court order C.A.D. to be placed in the Department's custody for placement in residential or therapeutic foster care. On December 17, 1997, C.A.D. had to be physically restrained after threatening to kill one of his teachers and commit suicide. C.A.D. was admitted to in-patient hospitalization for one week. On December 30, 1997, the juvenile officer petitioned the family court to place C.A.D. in in-patient hospitalization under the supervision of the Department. Following a one-week hospitalization, *25 C.A.D. was placed with his mother. C.A.D. remained with his mother until January 22, 1998, when the family court placed C.A.D. in the custody of the Department for placement in residential care. C.A.D. was also admitted to the MMHC for in-patient treatment. During a recess at his hearing, C.A.D. assaulted two security guards in an attempt to flee the courthouse. On March 9, 1998, C.A.D. was placed in therapeutic foster care and continued the day treatment program at MMHC. On March 31, C.A.D. was discharged from foster care and returned home.
At the April 17, 1998 rehearing, the Department supported the mother's custody claim. The juvenile officer favored the Department maintaining custody of C.A.D. On April 17, 1998, the family court ordered C.A.D. to remain in the Department's custody and supervision and scheduled a post dispositional review hearing for August 10, 1998. This appeal follows.
The Department raises two points on appeal. In its first point, the Department alleges that the trial court erred in giving the Department legal custody of C.A.D., since there is no statutory authority to award the Department legal custody of a child. Second, the Department asserts the trial court erred in awarding legal custody of C.A.D. to the Department because there was no substantial evidence to support such a transfer.
Before addressing the merits, we must take up two procedural matters. After this appeal was filed, this court informed the parties that it would allow the appeal to proceed, but specifically requested that the briefs address the issue of whether the Family Court's order was in fact final and appealable, even though not titled a judgment. The Department has fully briefed the issue and the juvenile officer agrees with the Department's analysis. Secondly, prior to this case being taken under submission, the juvenile officer of Boone County filed a Motion to Dismiss the Appeal for mootness. The Motion was taken with the case.
We first consider whether the Family Court's order is appealable. We raised the issue sua sponte because of our Supreme Court's decision in City of St. Louis v. Hughes, 950 S.W.2d 850 (Mo. banc 1997). In Hughes, the Court addressed the right of appeal granted by § 512.020, which provides for an appeal from "any judgment of any trial court in any civil cause ...." The Court noted that under this section a final "judgment" is a prerequisite to appellate review. Id. at 852. It then pointed out that Rule 74.01(a) provides that "[a] judgment is entered when a writing signed by the judge and denominated `judgment' is filed." Id. at 853 (emphasis in original) (quoting Rule 74.01(a)). From this analysis, the Court went on to hold that, for a writing to be an appealable judgment pursuant to § 512.020, it must be signed by a judge and denominated a judgment, either in the heading or in some other manner which makes it clear that "the document or entry is being `called' a `judgment' by the trial court." Id.
Prior to submission of the instant appeal, we handed down our decision in In re M.P.W., 983 S.W.2d 593 (Mo.App. W.D. 1999). In that case, relying on State v. Reber, 976 S.W.2d 450 (Mo. banc 1998), discussed infra, we held that the denomination requirement of Rule 74.01(a) was inconsistent with Juvenile Procedure Form 128.14, and comparable forms adopted by our Supreme Court, for dispositional orders in juvenile cases, and that such orders are appealable even if not denominated a judgment. In re M.P.W., at 596. M.P.W. involved a 1995 juvenile court "order" patterned after Juvenile Procedure Form 128.14 for dispositional orders. The form did not include any reference to the word "judgment." The Juvenile Procedure Forms were expanded, renumbered and amended effective January 1, 1999, limiting the extent of our holding in M.P.W. Moreover, while the order in the case sub *26 judice was entered prior to January 1, 1999, it was not based on one of the Forms contained in Rule 128, nor did it contain the phrase "ordered, adjudged and decreed" which we found meaningful in M.P.W. As a result, M.P.W. is distinguishable and not controlling.
Subsequently, but still prior to submission of this case, the Southern District of this court dismissed the appeal in In the Interest of J.W.P., 986 S.W.2d 198 (Mo. App. S.D. 1999). In that case, the parents of a child appealed an order of the juvenile court finding the child to be within its jurisdiction and placing the child in the custody of the Division of Family Services. The Southern District, sua sponte, raised the question whether the order appealed from was a final appealable judgment in light of Rule 74.01(a) and Hughes because it was not signed by a judge and not denominated a "judgment." The court granted the parties an opportunity to show cause why the appeal should not be dismissed. The mother did not file a response, and the father, although filing a response, did not address the failure of the juvenile court's order to meet the requirements of Rule 74.01(a). Addressing the issues, the court noted that in In the Interest of D.J.B., 704 S.W.2d 217 (Mo. banc 1986), our Supreme Court declared that the Rules of Civil Procedure generally apply to juvenile proceedings. In the Interest of J.W.P., at 200. The court went on to state that it "infer[red] from D.J.B. that the Supreme Court would hold Rule 74.01(a) applies to adjudications of a juvenile court like the one appealed from here. Because the order appealed from is not signed by the judge as required by Rule 74.01(a), this court holds the order is not final, and thus unappealable." Id. Significantly, however, the Southern District declared that because of such holding, it "need not consider the effect of the juvenile court's failure to denominate the order a `judgment' or `decree.'" Id.
In the instant appeal, the document from which the appeal is taken is signed by a judge but denominated an "order" in the heading or caption, and there is nothing contained in the body designating it a "judgment." Accordingly, this court is confronted with the issue left undecided by the Southern District.
Rules 110 through 128 govern practice and procedure in the juvenile and family courts. Rule 110.01. Rule 120.01(a) provides that appeals in juvenile proceedings "shall be allowed as provided by statute." Section 211.261.1 authorizes appeals in juvenile cases. It provides:
An appeal shall be allowed to the child from any final judgment, order or decree made under the provisions of this chapter and may be taken on the part of the child by its parent, guardian, legal custodian, spouse, relative or next friend. An appeal shall be allowed to a parent from any final judgment, order or decree made under the provisions of this chapter which adversely affects him. An appeal shall be allowed to the juvenile officer from any final judgment, order or decree made under this chapter, except that no such appeal shall be allowed concerning a final determination pursuant to subdivision (3) of subsection 1 of section 211.031. Notice of appeal shall be filed within thirty days after the final judgment, order or decree has been entered but neither the notice of appeal nor any motion filed subsequent to the final judgment acts as a supersedeas unless the court so orders. (Emphasis added).
Generally, "[a] final and appealable judgment disposes of all issues in the case and leaves nothing for future determination, unless a trial court has specifically designated the order as a final judgment for purposes of appeal." Bay's Texaco Serv. & Supply Co., Inc. v. Mayfield, 792 S.W.2d 50, 51 (Mo.App. E.D.1990). However, "[t]he standard for a `final' judgment in a juvenile matter differs from that under general civil law. The very nature of a juvenile proceeding entails an on-going case which does not result in a `final' order, *27 as that term is generally defined. The juvenile court's exercise of continuing jurisdiction over a child, however, does not defeat a right to appeal." In the Interest of N.D., 857 S.W.2d 835, 842 (Mo.App. W.D.1993).
Juvenile Court Rule 119 sets forth the matters that must be included in a final judgment. For example, the juvenile court "shall receive evidence and other relevant data offered concerning disposition or treatment that should be ordered for the juvenile." Rule 119.02(a)(9). The court then "shall enter a judgment directing the action that shall be taken regarding the juvenile." Rule 119.02(a)(10). This judgment "shall include the disposition or treatment of the juvenile." Rule 119.06(a). Once a disposition has been made, all the issues before the juvenile court have been disposed and nothing has been left for future determination, and the judgment is final and appealable. In the Interest of K.S., 856 S.W.2d 915, 917 (Mo. App. S.D.1993) (citations omitted). This is so, as noted supra, notwithstanding the on-going nature of juvenile proceedings which require post-dispositional review hearings to be held at least annually. Rule 119.08.
Rule 110.04 provides that "[i]f no procedure is specifically provided in these rules (Rules of Practice and Procedure in Juvenile Court), the court shall be governed... by Rules 41 through 101 to the extent not inconsistent with these rules." Rule 110.04; K.W. v. Missouri Div. Of Family Servs., 694 S.W.2d 915, 916 (Mo.App. E.D. 1985). Rule 74.01(a) defines "judgment" as including "a decree and any order from which an appeal lies." Rule 74.01(a) goes on to provide that "[a] judgment is entered when a writing signed by the judge and denominated `judgment' is filed." Nothing in the juvenile court rules states that Rule 74.01 is applicable to appeals from dispositional orders.
In In re M.P.W., we relied on the conflict analysis enunciated by our Supreme Court in State v. Reber, 976 S.W.2d 450 (Mo. banc 1998). We again find it applicable but for different reasons. In Reber, the appellant argued that the trial court's ruling on his Rule 29.15 motion was not final for purposes of appeal because it was not denominated a "judgment." Our Supreme Court noted that Rule 29.15 provides that motions under the rule are "governed by the rules of civil procedure insofar as applicable." Id. at 451. The Court stated that in determining whether a rule is applicable, inquiry is made as to whether the rule conflicts with, enhances or is neutral to the purposes of Rule 29.15. Id. If it is neutral or enhances, the rule is applicable. If the rule conflicts, it is not applicable. The Court then found Rule 74.01 directly in conflict with Rule 29.15 because one of the purposes of the latter rule is to avoid or prevent the litigation of stale claims and delay in the processing of claims, and that application of the denomination requirement of Rule 74.01(a) would run counter to that purpose. Id.
We reach a similar conclusion here. Rule 110.02 provides that the Juvenile Court Rules shall be construed "to conduce to the welfare of the juvenile and the best interests of the state." The promotion of the best interest and welfare of the child is the primary consideration in custody cases in juvenile court. P.A.W. v. A.M.W., 716 S.W.2d 284, 288 (Mo.App. E.D.1986); In re R.M., 697 S.W.2d 205, 207 (Mo.App. W.D.1985). Custody issues should be disposed of as expeditiously as possible because they involve young developing children. Frequently, as in this case, we are dealing with a removal of a child from the actual physical and legal custody of the parents. Such cases implicate the fundamental right of parents to rear their children free from government interference. In the Interest of M.D.S., 837 S.W.2d 338, 339-40 (Mo.App. W.D. 1992). Delay in determining whether the custodial arrangement will be continued is detrimental to the best interests of the child and does not "conduce to the welfare of the juvenile and the best interests of the state." Rule 110.02. Therefore, we hold *28 that the denomination requirement of Rule 74.01(a) is inconsistent with, and inapplicable to, dispositional orders of juvenile courts, and such orders are appealable pursuant to Rule 120.01 and § 211.261.
Next, we take up the motion to dismiss. A question is moot when it seeks a judgment upon some matter that would lack any practical effect on any then existing controversy. Duffe v. Zych, 676 S.W.2d 70, 72 (Mo.App. E.D.1984). A case becomes moot when an event occurs making it impossible for an appellate court to grant effective relief. K.E.B. v. H.G.B., 782 S.W.2d 85, 86 (Mo.App. E.D.1989). Here, the juvenile officer contends that the placement of C.A.D. in residential treatment is such an event that renders any action this court could undertake as ineffectual. The juvenile officer maintains that by its earlier placement of C.A.D. in residential care, the Department has recognized the validity of the juvenile court's judgment. The juvenile officer alleges that the Department voluntarily consents to receiving legal custody of children by court order in at least three jurisdictions in Missouri.[5] The juvenile officer believes that the Department's practices in regard to these jurisdictions is an implied recognition that the juvenile court has the authority to place children in the Department's legal custody, even in cases where the mother has not been neglectful.
The juvenile officer's contentions have no bearing on the central question of whether there is a legal basis for the Department to have legal custody of C.A.D. Neither the Department placing C.A.D. in residential treatment, nor acquiescence to legal custody in other cases in other jurisdictions (an assertion strongly disputed by the Department), resolves the legal question whether the Department has authority to have legal custody of the child. Moreover, it is undisputed that the overall purpose of Chapter 211, which governs the juvenile courts, is to protect and safeguard the best interest of the juvenile. Smith v. Harold's Supermarket, Inc., 685 S.W.2d 859, 863 (Mo.App. W.D.1984). Although the juvenile court was created to help children, it is equally responsible for protecting the legal and constitutional rights of the parents. In the Interest of A.H., 689 S.W.2d 771, 773 (Mo.App. W.D.1985). Section 211.261, the statute that governs the appeals process for a juvenile case, grants C.A.D.'s mother a right of appeal both on C.A.D.'s behalf and on her own behalf, and the legal custodian may also appeal on behalf of the child. Here, the Department is acting as legal custodian on behalf of C.A.D. to bring the appeal. Missouri courts, acting in the best interest of the child, have routinely declined to dismiss appeals of decisions by the juvenile court. K.W., 694 S.W.2d at 917; see also In re J.L.H., 647 S.W.2d 852, 856 (Mo.App. W.D. 1983). If we were to dismiss the Department's appeal as moot based on the Department's actions, we would deprive C.A.D. of his right to contest the juvenile court's order to place him in the Department's legal custody. It is in C.A.D.'s best interest to reach the merits of this case.
Finally, even assuming, arguendo, that the case was moot as among the parties, we have discretion to decide a question which presents an unsettled legal issue of public importance. In the Interest of C.D., 846 S.W.2d 784 (Mo.App. S.D. 1993). We will exercise our discretion when an important public issue of a recurring nature will otherwise evade appellate review. Id. Here, we are presented with a question of whether the juvenile court can order the Department to take legal custody of a child. The importance of such question cannot be denied and it will no doubt be a recurring issue if not decided. For these reasons, the merits will be addressed. *29 The juvenile officer's Motion to Dismiss Appeal is denied.
The standard of review for decisions of the juvenile court is the same as that of court tried civil cases. In the Interest of R.D., 842 S.W.2d 560, 561 (Mo. App. W.D.1992). We will not reverse the court's order unless there is no substantial evidence to support the ruling or there is an erroneous declaration or application of the law. Id., citing Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976). In our review of the sufficiency of the evidence, we consider the facts and all reasonable inferences therefrom in the light most favorable to the trial court's order. In the Interest of R.A., 913 S.W.2d 142, 144 (Mo. App. W.D.1996). Although the trial court has broad discretion in matters of child custody, the ultimate concern must be the best interests of the child. R.J.A. v. G.M.A., 969 S.W.2d 241, 244 (Mo.App. S.D. 1998). Since we presume that the trial court acted out of concern for the child's best interest, we give great deference to the trial court's custody determination. Id.
In its first point on appeal, the Department asserts that the juvenile court erroneously applied the law by placing C.A.D. in the Department's legal custody. It contends that there is no statutory authority for it to have legal custody of children, particularly where the legal custodian must provide consent to treatment by the Department.
Chapter 211 generally deals with the powers and duties of the Juvenile Courts, while Chapter 630 provides most of the statutory authority and responsibility of the Department. Resolution of the issue before us necessarily requires review and analysis of various provisions of both chapters.
The primary goal of statutory construction is to "determine the intent of the legislature from the language used, to give effect to that intent if possible, and to consider the language in its plain and ordinary meaning." Campbell v. Labor & Indus. Rel. Com'n, 907 S.W.2d 246, 249 (Mo.App.1995). "The entire statute should be construed to determine legislative intent, and all provisions should be harmonized, if reasonably possible." Id . All consistent statutes relating to the same subject are in pari materia and are construed together and presumed to be intended to be read consistently and harmoniously. State ex rel. Rothermich v. Gallagher, 816 S.W.2d 194, 200 (Mo. banc 1991).
PharmFlex, Inc. v. Division of Employment Sec., 964 S.W.2d 825, 830 (Mo.App. W.D.1997).
The juvenile officer cites § 211.181 for the proposition that the juvenile courts have the authority to order a child into the legal custody of the Department. Section 211.181 directs the juvenile court to commit a child in need of treatment to the proper government or other agency. In relevant part, § 211.181 provides:
1. When a child ... is found by the court to come within the applicable provisions of subdivision (1) of subsection 1 of section 211.031, the court shall so decree and make a finding of fact upon which it exercises its jurisdiction over the child ... and the court may ... (2)[c]ommit the child ... to the custody of:
(a) A public agency or institution authorized by law to care for children or to place them in family homes ...;
(b) Any other institution or agency which is authorized or licensed by law to care for children or place them in family homes;
The juvenile officer nevertheless concedes that § 211.181, as a broad general grant of power to commit a child to the custody of a public agency or institution, must yield to the more specific provisions of §§ 211.201 and 211.202. Section 211.201.1, which governs the commitment of children to the Department, provides in relevant part, "the juvenile court may not order that children be detained by, committed to or *30 otherwise placed in the department of mental health for periods longer than thirty days except as provided in sections 211.201 to 211.207." Section 211.202.3 provides that "no child shall be committed to a mental health facility under this section for other than care and treatment." The language in the parallel provision of § 211.203.3, for children who are mentally retarded or developmentally disabled, is similar in that it provides that "no child shall be committed to the department of mental health for other than residential care and habilitation." And under § 211.207.3, the Division of Youth Services may transfer physical custody of a child to the Department only for inpatient treatment. These sections make clear that the Juvenile Court may place children with the Department for care and treatment. However, care and treatment, even inpatient treatment, or in the case of children who are mentally retarded or developmentally developed, residential habilitation in a mental health facility, is not equivalent to legal custody. Under the Juvenile Code, "legal custody" means "the right to care, custody and control of a child and the duty to provide food, clothing, shelter, ordinary medical care, education, treatment and discipline of a child." § 211.021(4). Consequently, we do not perceive these statutory provisions as providing authority for designation of the Department as a child's legal custodian.
This conclusion is bolstered by comparing the statutory provisions relating to the Department with those relating to the Division of Family Services ("Family Services") and the Division of Youth Services ("Youth Services"). Unlike the Department, both Family Services and Youth Services have the explicit authority to receive legal custody of children. For example, the state's training schools are granted the power to "have the exclusive custody, care and guardianship" of minors committed to such schools pursuant to §§ 210.360 to 210.470. § 210.430 (emphasis added). Even where a child is placed in a family's home, the training schools keep "supervising care" over the child so the child can be placed back in the "custody, care and protection of the training school," if that becomes necessary. § 210.440.2.
Similarly, Youth Services is granted specific authority to provide "for the reception, classification, care, activities, education and rehabilitation of all children committed to the division" pursuant to Chapter 219. § 219.016.2(1), RSMo Cum. Supp. (1997). This chapter specifies that to "commit" a child to Youth Services means "to transfer legal and physical custody" of that child to Youth Services. § 219.011.1(4) (emphasis added). Furthermore, Youth Services specifically is given power to authorize physicians, psychiatrists, surgeons or dentists to provide routine medical, psychiatric, surgical or dental care and treatment for a child in its custody. § 219.066.2. It also may authorize emergency treatment to be performed. § 219.066.1.
By the same token, Chapter 207 grants Family Services "the power: ... [t]o accept for social services and care, homeless, dependent or neglected children in all counties where legal custody is vested in the division of family services by the juvenile court". § 207.020.1(17) (emphasis added). This mandate for Family Services to serve as legal custodian for certain children has been confirmed by case law. For example, in K.B. v. Missouri Div. of Family Servs., 672 S.W.2d 710 (Mo.App. E.D. 1984), the court denied a request by Family Services to be relieved of legal custody of a child it claimed it did not have funding to place at a particular home in Kansas City. Id. at 711. This Court followed the holding in that case a year later when we affirmed an order that Family Services place a child with unique needs at the Devereux Foundation, a private treatment facility in Victoria, Texas, and pay for such placement. In re R.M., 697 S.W.2d at 208.
In contrast, the statutes that grant the Department its powers do not *31 give the Department the authority to receive a child under its care into its legal custody. It is a well-established rule of law that an administrative agency such as the Department is a creature of the General Assembly and has only those powers expressly conferred or necessarily implied by statute. Cohen v. Missouri Bd. of Pharmacy, 967 S.W.2d 243, 247 (Mo.App. W.D.1998), quoting Bodenhausen v. Missouri Bd. of Registration for the Healing Arts, 900 S.W.2d 621, 622 (Mo. banc 1995). Thus, a public agency's powers and duties include "those lying fairly within its scope, those essential to the accomplishment of the main purpose for which the office was created, and those which, although incidental and collateral, serve to promote the accomplishment of the principal purposes." Missouri Ethics Comm'n v. Wilson, 957 S.W.2d 794, 798 (Mo.App. W.D.1997) (citations omitted); see also State ex rel. McKittrick v. Wymore, 345 Mo. 169, 132 S.W.2d 979, 987 (banc 1939) (citation omitted).
The statutes governing the Department assume that some person or agency other than the department will have legal responsibility for a child receiving services from the Department; therefore, the power to have legal custody of a child cannot be imputed fairly to the Department. For example, § 630.620, RSMo Cum.Supp. (1997) requires that a child's guardian consent to a placement proposed by the Department. The Department also must get the consent of a child's legal guardian before it may authorize any medical or surgical treatment of the child. § 630.183. Similarly, a child's guardian must consent to "any hazardous treatment or surgical procedure". § 630.115.1(12), RSMo Cum.Supp. (1997). Additionally, a child's legal custodian has a right to the child's treatment records. § 630. 140.2(2), RSMo Cum.Supp. (1997).
More importantly, the General Assembly specifically provided that the Department cannot treat a minor, such as C.A.D., who is in need of comprehensive psychiatric services without the consent of the child's "legal custodian". § 632.070. The statutes require the Department to advise legal custodians of minors that "they have the right to consult their regular physicians before giving their consent to any treatment". Id. Other statutory provisions make it clear that a child's legal custodian can access the mental health system. The Department is required to evaluate any child on application of that child's legal custodian. § 632.110. The child's legal custodian "shall have the right to authorize his evaluation, care, treatment and rehabilitation and the right to refuse permission to medicate the minor; except that medication may be given in emergency situations." § 632.110.3. The child's legal custodian also has the right to request that the child be discharged from a mental health facility, as long as the child does not present "a likelihood of serious physical harm to himself or others". § 632.155.
Review of the relevant statutes compels the conclusion that the General Assembly did not intend for the Department to have legal custody of children. It recognized that if the Department were legal custodian, there would be no safeguard to protect the child, and that the child could be subjected to any or all forms of treatment. We perceive that this recognition is based upon a potential conflict of interest. Patients in the Department's care have certain rights and entitlements. See generally §§ 630.100-630.200. Among others, a minor may not be subjected to (a) experimental research without the prior written and informed consent of his parent or guardian, § 630.115.1(8); (b) hazardous treatment or surgical procedure without his parents' or guardian's consent, § 630.115.1(11); (c) electroconvulsive therapy or psychosurgery unless his parents or guardian have first obtained court orders authorizing it, § 630.130(4); § 630.133.1. If the Department were the child's legal custodian, the right to give informed consent *32 to treatment could be jeopardized.[6] The General Assembly recognized that the existence of independent parental authority or that of a neutral custodian serves as a significant safeguard to guarantee protection of the child's interests which can conflict with that of the government. The wisdom of that decision was demonstrated in this case when C.A.D.'s treating psychiatrist, Dr. McNaul, noted that she was not sure who was supposed to provide consent to treatment of a child where the Department had been made the child's legal custodian.
For the foregoing reasons, we conclude the juvenile court erred in designating the Department legal custodian of C.A.D.
In the Department's second point on appeal on behalf of the minor child, it claims there was no substantial evidence to support a transfer of custody to the Department. Our resolution of Point I abrogates the transfer of custody, and requires remand of the case to the juvenile court for further proceedings. Accordingly, we need not address the second point.
The juvenile court's judgment placing C.A.D. in the legal custody of the Department is reversed and the cause is remanded for further proceedings consistent with this opinion.
All concur.
NOTES
[1] Both C.A.D.'s mother and his Guardian ad Litem adopted the issues set forth in the Department's brief and chose not to file separate briefs.
[2] Families First is an intensive home-based program that offers counseling, behavior management skills and other support services for up to twenty hours a week for five weeks.
[3] All statutory references are to RSMo 1994 unless otherwise noted.
[4] Section 211.031.1(3) provides in relevant part that:

Except as otherwise provided in this chapter, the juvenile court or the family court in circuits that have a family court... shall have exclusive original jurisdiction in proceedings involving any child who is alleged to have violated a state law or municipal ordinance,...jurisdiction may be taken by the court of the circuit in which the child... resides or may be found or in which the violation is alleged to have occurred ...
[5] The juvenile officer asserts that in the City of St. Louis, Jackson and St. Louis Counties, the juvenile court enters orders giving the Department legal custody over children with the Department's consent.
[6] Indeed, it has been suggested that the conflict of interest existing in such a situation could rise to the level of a denial of constitutional due process. Tenn.Op.Atty.Gen, No. 86-023 (Jan. 31, 1986).