

# SUPREME COURT OF MISSOURI
## en banc

IN THE INTEREST OF: P.D.E.,     )
                                 )
       Appellant,               )
                                 )

v.                          )     No. SC99896

JUVENILE OFFICER,       )
                                 )
       Respondent.         )

*Opinion issued June 13, 2023*

## APPEAL FROM THE CIRCUIT COURT OF CALLAWAY COUNTY
### The Honorable Sue M. Crane, Judge

P.D.E. ("Juvenile") appeals his delinquency adjudication, contending he did not "knowingly and voluntarily" admit to the conduct alleged in the juvenile officer's amended petition. Because Juvenile's appeal of this issue is untimely, this Court dismisses the appeal.

### Factual and Procedural Background

By way of an amended petition, the juvenile officer alleged Juvenile committed second-degree burglary, first-degree trespass, and two counts of second-degree property damage. The amended petition asserted Juvenile, in concert with others, unlawfully entered a building owned by Mount Vernon Church and damaged the structure and

furniture by breaking windows, drywall, a door, toilets, a piano, pews, chairs, and a security camera.

On January 26, 2021, the juvenile division of the Callaway County family court ("juvenile division") held an adjudication hearing on the amended petition. Counsel for Juvenile stated Juvenile would admit to the amended petition. Responding to an inquiry by his counsel, Juvenile stated he did not have any questions about what had just happened and acknowledged he had discussed the amended petition with his counsel the previous day. Nothing in the record of the adjudication hearing explicitly shows confirmation of whether Juvenile's admissions were freely and voluntarily given and knowingly made or whether a basis in fact existed for those admissions.[1] The juvenile division entered an adjudication order finding the allegations proven true beyond a reasonable doubt and determining Juvenile to be in need of care and treatment pursuant to section 211.031.1(3).[2]

On March 2, 2021, the juvenile division held a dispositional hearing. The juvenile officers previously filed social investigation contained dispositional recommendations, which included that Juvenile would pay restitution in an amount to be determined. Juvenile's counsel announced agreement with the recommendations but expressed concern about restitution and requested the ability to have a hearing regarding restitution, if necessary. The juvenile division entered an order of disposition the same day as the hearing, placing Juvenile under supervision in the custody of his mother. Nine conditions

---

[1] Rule 128.02d sets forth a list of findings required when a juvenile admits to allegations.
[2] All statutory references are to RSMo 2016, unless otherwise specified.

were included in the order, one of which was that "Juvenile [was] to pay restitution in an amount to be determined."

After review hearings on April 20 and May 18, 2021, a restitution hearing was set for June 22, 2021. Following continuances, the restitution hearing occurred July 13, 2021. At this hearing, the juvenile officer sought imposition of restitution in the amount of $4,000. Juvenile requested a lower amount. The juvenile division took the matter under advisement. On October 6, 2021, via a docket entry, restitution was set at $4,000.

Juvenile filed a notice of appeal on October 19, 2021. The notice of appeal contained the issue expected to be raised on appeal: that the juvenile division's order directing Juvenile to pay $4,000 in restitution was unlawful and unreasonable. Juvenile now appeals, however, arguing the juvenile division plainly erred in finding he admitted to the delinquency allegations without meaningfully questioning him about his purported admissions.[3] In other words, Juvenile is not seeking review of the October 6, 2021, order setting the restitution amount. Rather, he seeks review of the adjudication hearing and order of disposition, which was entered March 2, 2021.

## Juvenile's Appeal is Untimely

The juvenile officer contends this Court is without jurisdiction to hear this appeal because Juvenile's notice of appeal was untimely. A party's right to an appeal in this state is derived solely from statute. *J.I.S. v. Waldon*, 791 S.W.2d 379, 379 (Mo. banc 1990); *see also* Rule 120.01 (providing "[a]n appeal shall be allowed as provided by statute" in

---

[3] The court of appeals transferred the case to this Court after opinion. Mo. Const. art. V, sec. 10.

juvenile proceedings). In this juvenile matter, the right to appeal is governed by section 211.261.1, which provides, in relevant part, "An appeal shall be allowed to the child from any final judgment, order or decree made under the provisions of" chapter 211. The timely filing of a notice of appeal is a jurisdictional requirement. *Spicer v. Donald N. Spicer Revocable Living Tr.*, 336 S.W.3d 466, 471 (Mo. banc 2011). As a result, an appellate court must dismiss an appeal if the notice of appeal is untimely. *Id.* Section 211.261.1 states that a "[n]otice of appeal shall be filed within thirty days after the final judgment, order or decree has been entered."[4] Because Juvenile's current appeal of infirmities in his adjudication hearing was filed more than seven months after the juvenile division entered its order of disposition, the crux of the matter is whether the order of disposition was "final" when it was entered. To address this issue, a brief explanation of juvenile proceedings pertaining to delinquency is helpful.

The juvenile proceeding is bifurcated into an adjudication phase and dispositional phase. *See generally* Rule 128. "The purpose of the adjudication hearing is to determine whether the allegations in the petition or motion to modify are established." Rule 128.02 cmt. The purpose of the dispositional hearing is twofold; it exists "to determine: (1) the legal and physical custody of the juvenile, and (2) the services, treatment and placement necessary to facilitate the care, protection and discipline of the juvenile." Rule 128.03 cmt.

---

[4] A plurality of this Court determined a party has 40 days after entry of the juvenile division's judgment to file the notice of appeal. *D.J.B.v. M.B.*, 704 S.W.2d 217, 218 (Mo. banc 1986) (holding Rules 81.04 and 81.05(a) apply to juvenile proceedings for the purpose of determining the timeliness of filing the notice of appeal).

4

It is not until the order of disposition has been issued that a party may appeal. *T------G------ v. T------G------*, 455 S.W.2d 3, 8 (Mo. App. 1970) (holding "[a] finding of delinquency on one of the grounds set forth under Section 211.031 is a very necessary but impotent determination until the court decides what should be done to the child under Section 211.181").

Returning to the issue of finality in section 211.261.1, the phrase "final judgment, order or decree" is left undefined in chapter 211. *See* chapter 211; *see also D.J.B.*, 704 S.W.2d at 218. Assessing finality in juvenile proceedings is markedly dissimilar from evaluating finality in general civil law: "The very nature of a juvenile proceeding entails an on-going case which does not result in a 'final' order, as that term is generally defined." *N.D. v. B.J.D.*, 857 S.W.2d 835, 842 (Mo. App. 1993). But "once a disposition is made concerning the juvenile, even though post-dispositional hearings may continue to be held, all the issues before the court have been disposed of and nothing is left for determination." *In re M.P.R.*, 381 S.W.3d 392, 393 (Mo. App. 2012).

Section 211.031.1(3) gives the juvenile division exclusive original jurisdiction in proceedings involving a child who is alleged to have violated a state law. Section 211.181.3 details the variety of dispositional measures the juvenile division is authorized to order when a child is found to come within the provisions of section 211.031.1(3). One of the dispositional measures is the imposition of restitution. Section 211.181.3(7). The juvenile division may "[o]rder the child to make restitution or reparation for the damage or loss caused by his or her offense." *Id.* The statute continues to provide:

5

In determining the amount or extent of the damage, the court may order the juvenile officer to prepare a report and may receive other evidence necessary for such determination. The child and his attorney shall have access to any reports which may be prepared, and shall have the right to present evidence at any hearing held to ascertain the amount of damages. Any restitution or reparation ordered shall be reasonable in view of the child's ability to make payment or to perform the reparation.

*Id.*

At the dispositional hearing, the juvenile division must "enter an order for the legal and physical custody of the juvenile" and "order such disposition as is appropriate and provided by law." Rule 128.03d(1), (3). At the dispositional hearing on March 2, 2021, the juvenile division abided by this directive. It ordered Juvenile to be a ward of the court in the custody of his mother and under the supervision of the juvenile officer. It ordered multiple conditions of that supervision, including that Juvenile pay restitution in an amount to be determined. At this point, the order of disposition was as "final" as any order of disposition made by the juvenile division can be. *See* section 211.251.1 ("A decree of the juvenile court made under the provisions of section 211.181 may be modified at any time on the court's own motion."); Rule 119.03b ("The court may modify a judgment or order under which it has jurisdiction over a juvenile after a hearing on the record or by agreement of all parties."). At the entry of disposition under Rule 128.03d, the time begins to run for filing a notice of appeal. *M.P.R.*, 381 S.W.3d at 393.

Citing a variety of civil cases outside the context of juvenile law, Juvenile argues the order of disposition was not final because restitution, although ordered, was left "in an amount to be determined." Section 211.181.3(7), however, does not explicitly require the determination of the specific amount of restitution at the time of disposition and even

6

contemplates the potential of another hearing to ascertain that amount.[5] The subdivision likewise does not provide that the order of disposition would remain pending until the amount of restitution is ascertained. *Id.* The juvenile division determined Juvenile would be responsible for restitution. Having met the dispositional requirements of section 211.181.3 and Rule 128.03d, this is sufficient to be a "final judgment, order or decree" that is capable of being appealed. Because Juvenile did not appeal the order of disposition until many months after the filing deadline for the notice of appeal had passed, Juvenile's appeal of the adequacy of his adjudication hearing was untimely. The appeal must be dismissed. *See Spicer*, 336 S.W.3d at 471.

Holding the order of disposition here was final, despite lacking the quantification of restitution, comports with the goals of chapter 211 and the reality of the fluidity of orders in juvenile proceedings. Chapter 211 is to be construed to promote the juvenile's welfare and the best interest of the state. Section 211.011; Rule 110.02. Delaying finality of the order of disposition here until the precise restitution amount ultimately was determined could have impacted Juvenile's custody and his right to appeal that custody determination. For instance, had Juvenile been committed to the custody of a residential facility or the division of youth services, if disposition was not final, Juvenile would have been incapable of appealing his placement for months given the timeline of this case. *See* section

---

[5] The statute governing the process for the juvenile division to enter a judgment of restitution against both a parent and juvenile also contemplates a separate restitution hearing. Section 211.185.6 ("A restitution hearing to determine the liability of the parent and the child shall be held not later than thirty days after the disposition hearing and may be extended by the court for good cause.").

211.181.3(2), (3) (permitting the juvenile to be committed to the custody of a public agency, institution, or the division of youth services). Delaying a juvenile's ability to appeal a physical custody determination is not conducive to a juvenile's welfare. A holding that the order of disposition lacked finality could also impact the expeditious resolution of the juvenile officer's petition. A juvenile, several months after an admission to allegations and entry of an adjudication order, would be able to ask for a new trial or file a motion to withdraw his or her admission. The potential for dilatory maneuvering is contrary to promoting the juvenile's welfare and the best interest of the state.

Unlike a monetary judgment in the civil setting, restitution in juvenile proceedings is not set in stone. As referenced previously, an order deriving from section 211.181 is unequivocally subject to modification. Section 211.251.1; Rule 119.03b. Consequently, restitution may be adjusted after entry of the order of disposition. Pursuant to section 211.181.3(7), a change in the juvenile's ability to make payment could constitute grounds for changing the amount of restitution required. The juvenile division may deem some other form of reparation more appropriate given changing circumstances. The victim may desire to accept an apology in lieu of restitution, rendering ordered restitution subject to modification. Changes resulting from a variety of factors the juvenile division may consider in evaluating restitution support the conclusion here that the order of restitution in an indeterminate amount within the order of disposition sufficed to create a final judgment, order, or decree. Incorporating the concept of finality from the civil setting for a "final judgment" in a juvenile proceeding, as advocated by Juvenile, is entirely at odds with the nature of proceedings in the juvenile division—every matter of disposition is, in a

sense, subject to future determination. This Court holds an order of disposition is final and appealable. If the exact amount of restitution is not established in the order of disposition, the ultimate determination of restitution results in a modification of the order, and the modification is itself separately appealable under section 211.261.1.

## Conclusion

For the reasons set forth above, Juvenile's appeal is dismissed.

_____
Robin Ransom, Judge

Wilson, C.J., Russell, Powell, Fischer
and Draper, JJ., concur; Breckenridge, J.,
dissents in separate opinion filed.



# SUPREME COURT OF MISSOURI
## en banc

IN THE INTEREST OF: P.D.E.,      )
     )
         Appellant,      )
     )
v.      )      No. SC99896
     )
JUVENILE OFFICER,      )
     )
         Respondent.      )

## DISSENTING OPINION

I respectfully dissent. The right to appeal is purely statutory and, here, section 211.261.1[1] grants a child the right to appeal "from any final judgment, order, or decree made under the provisions of" chapter 211. A "final judgment, order or decree" is one that resolves all issues, or the last pending issue, and leaves nothing for future determination. Here, the circuit court did not completely resolve all issues when it ordered P.D.E. to pay restitution in its order of disposition but expressly left the amount of restitution for future determination. Rather, it resolved the last pending issue only when it ordered the amount of restitution he was to pay. Because there was no final judgment, order, or decree in this

---

[1] Because judgment was entered in this case in October 2021, all statutory references are to RSMo Supp. 2021, unless otherwise noted.

case until a court order set the amount of restitution and P.D.E. timely filed a notice of appeal from that order, the appeal is timely and should be addressed on its merits.

## Facts and Procedural Background

In January 2021, the juvenile officer of Callaway County filed an amended petition alleging P.D.E. committed acts that, if he were an adult, would constitute the offenses of burglary in the second degree, trespass in the first degree, and two counts of property damage in the second degree.[2] The circuit court held an adjudication hearing in January 2021 in which counsel for P.D.E. stated P.D.E. "admit[ted] to the first amended petition." While P.D.E. responded to a question from his counsel that he did not have any questions about the court proceeding and had discussed the amended petition with counsel, there was no examination of P.D.E. to demonstrate on the record that his admissions were knowing and voluntary or that there was a factual basis for his admission. On the basis of P.D.E.'s admission, the circuit court determined P.D.E. "is in need of care and treatment pursuant to 211.031.1(3) RSMo" and ordered that P.D.E. "be made a ward of the court, in the custody of his mother and under the supervision of the Juvenile Officer for placement with his mother, [p]ending dispositional hearing."

---

[2] Although the juvenile officer's first amended petition alleged P.D.E. committed these criminal offenses, a petition filed "pursuant to sections 211.031.1(3) and 211.091 serves only to invoke the circuit court's exclusive jurisdiction by identifying the individual as being younger than 1[8] years old and alleging that the child has engaged in conduct that would be a crime if committed by an adult." *State v. Nathan*, 404 S.W.3d 253, 259 (Mo. banc 2013). Adjudication of the allegations is not an adjudication of the child's guilt or innocence of a crime. Section 211.271.1, RSMo 2016.

On March 2, 2021, the circuit court held a disposition hearing and entered an order of disposition. In its order, the court placed P.D.E. in his mother's custody, under the juvenile officer's supervision, with the following conditions:

Juvenile to meet with his supervising deputy juvenile officer as directed.

Juvenile to attend programming as directed by his supervising deputy juvenile officer.

Juvenile to participate in mental health services and follow the directives of the provider.

Juvenile to complete 23 hours of community service work as directed.

Juvenile to pay restitution *in an amount to be determined*.

Juvenile's peer associates to be approved in advance by his supervising deputy juvenile officer.

Juvenile to abide by the reasonable and lawful directives of his mother . . . and inform her [of] his whereabouts at all times.

Juvenile to attend school or an approved educational program daily unless excused by his supervising deputy juvenile officer or a physician and behave appropriately while in attendance.

Juvenile to submit to random urinalysis screens.

(Emphasis added). On July 13, 2021, the circuit court held a hearing to determine the amount of restitution. The juvenile officer requested the amount be $4,000. P.D.E.'s counsel provided estimates that the actual damage was $2,556. The court took the matter under advisement and issued an order on October 6, 2021, ordering $4,000 in restitution.

On October 19, 2021, P.D.E. filed a notice of appeal identifying the October 6, 2021 order determining the amount of restitution as the order from which he appealed. The notice of appeal identified the lawfulness and reasonableness of the restitution amount as

3

the issue expected to be raised on appeal. P.D.E.'s brief filed in the court of appeals raised one claim of error that the circuit court plainly erred in finding P.D.E. admitted the delinquency allegations. The court of appeals transferred the case to this Court after opinion pursuant to Rule 83.02 and article V, section 10 of the Missouri Constitution.

## Appeal Timely[3]

The dispositive issue in the principal opinion is whether P.D.E. timely filed this appeal. It finds he did not. But the right to appeal is purely statutory, and the juvenile code provides a child the right to appeal from "any final judgment, order or decree made under the provisions of [chapter 211]." Therefore, P.D.E. had a right to appeal only upon the circuit court entering a "final" order resolving the juvenile officer's delinquency petition, which did not occur until October 6, 2021.

A juvenile delinquency proceeding is a civil case. *State v. R.J.G.*, 632 S.W.3d 359, 363 (Mo. banc 2021). As in other civil cases, as the principal opinion concedes, "finality" requires the circuit court to completely resolve all issues raised in the petition and leave nothing for future determination.

> [The] judgment "shall include the disposition or treatment of the juvenile." Once a disposition has been made, all the issues before the juvenile court have been disposed and *nothing has been left for future determination*, and the judgment is final and appealable. This is so . . . notwithstanding the on-going nature of juvenile proceedings which require post-dispositional review hearings . . . .

---

[3] Portions of Judge Alok Ahuja's well-reasoned dissenting opinion filed in the court of appeals prior to transfer are incorporated herein without further attribution.

*C.A.D. v. Juv. Officer*, 995 S.W.2d 21, 27 (Mo. App. 1999) (emphasis added) (internal citations omitted).

The principal opinion misapplies the law in holding "[a]ssessing finality in juvenile proceedings is markedly dissimilar from evaluating finality in general civil law." In so holding, it cites *N.D. v. B.J.D*, 857 S.W.2d 835, 842 (Mo. App. 1993), but the court of appeals' decision does not support the principal opinion's broad statement. In *N.D.*, the court of appeals stated:

> The standard for a "final" judgment in a juvenile matter differs from that under general civil law. The very nature of a juvenile proceeding entails an on-going case which does not result in a "final" order, as that term is generally defined. The juvenile court's exercise of continuing jurisdiction over a child, however, does not defeat a right to appeal.

*Id.* The context of the statement in *N.D.* shows it found a final judgment in a juvenile case different from a final judgment in other civil cases because the circuit court in a juvenile proceeding retains jurisdiction after judgment becomes final. It correctly recognized the effect of section 211.041 making juvenile cases an exception "authorized by law" to the general rule that "a circuit court loses jurisdiction over a case when a judgment becomes final." *State ex rel. AJKJ, Inc. v. Hellmann*, 574 S.W.3d 239, 242 (Mo. banc 2019). *N.D.* does not provide support for holding the finality of a circuit court's judgment of adjudication and disposition requires less than a complete determination of all issues before the court.

Indeed, the opposite is true. Orders adjudicating only whether a child comes within the provisions of the juvenile code are not appealable because they fail to dispose of all issues and leave the disposition of the child for future determination.

5

*T---G--- v. T---G---*, 455 S.W.2d 3, 7 (Mo. App. 1970). In reaching that result, the right to appeal any "final judgment, order or decree" under section 211.261.1 correctly has been related to the "general rule on civil appeals [in section 512.020] requir[ing] the judgment to dispose of all parties and all issues in the case, leaving nothing for final determination before it is final and appealable." *Id.* There is no difference in assessing the finality of a judgment under section 211.261.1 than in other civil cases.

This point was taken for granted in *In re R.B.*, 186 S.W.3d 255, 257 (Mo. banc 2006), when this Court indicated a final judgment under section 211.261.1 must completely resolve all issues and leave nothing for future determination the same as a final judgment under section 512.020, RSMo 2016. There, the Court contrasted the interlocutory appeals available to a juvenile officer under section 211.261.3, RSMo 2000, with the appeals from "any final judgment, order or decree" available to a child under subsection 1 of the same statute. *Id.* It held "[a]n interlocutory appeal is an appeal taken from a proceeding before the entry of final judgment" whereas "a final judgment is one that decides every issue in a case and leaves nothing else for the court to decide." *Id.* Consistent with that understanding of a final judgment, the court of appeals has held that only after an order of disposition fully resolves all issues and leaves nothing for future determination is there a "final judgment, order or decree" from which an appeal may be taken under section 211.261.1. *Id.*; *C.A.D.*, 995 S.W.2d at 27; *see also N.B. v. Jasper Cnty. Juv. Off.*, 64 S.W.3d 907, 913 (Mo. App. 2002) ("Once a disposition has been made, all the issues before the juvenile court have been disposed and nothing has been left for future determination, and the judgment is final and appealable."); *In re K.S.*, 856 S.W.2d 915, 916 (Mo. App. 1993)

6

(recognizing "[a]ppellate review of juvenile proceedings is in the nature of appellate review of court-tried civil cases" and an "order is final and appealable if it disposes of all issues in the case and leaves nothing for future determination").  As a result, even though a circuit court may exercise ongoing jurisdiction over a child and the child's family in a juvenile case, an order is final for appeal if it determines whether a child comes within the court's jurisdiction and the remedial measures to which the child and his or her family will be subject, leaving "nothing . . . for future determination."

The circuit court's ongoing jurisdiction over juvenile cases is comparable to the circuit court's ongoing authority in dissolution and modification proceedings pursuant to chapter 452 and paternity proceedings pursuant to chapter 210.  In dissolution and modification proceedings, when the circuit court fully resolves issues regarding physical and legal child custody, parenting time, child support, and spousal maintenance, its judgment of dissolution or modification is final for appeal even though it retains jurisdiction to modify or terminate such orders when statutory provisions permit.  Section 452.370, RSMo 2016; section 452.410.  Similarly, in paternity proceedings, when the circuit court fully adjudicates the existence of a parent-child relationship and other issues, including the duty of support, custody and guardianship, and visitation pursuant to section 210.841, its judgment is final for appeal even though the circuit court retains authority to modify any provision "respecting support."  Section 210.845.1, RSMo 2016.  The circuit court's ongoing jurisdiction to adjudicate matters and enter subsequent orders has no effect on the requirements for finality of a judgment of dissolution or modification.  Section 452.360, RSMo 2016.  A judgment must adjudicate all matters raised in a dissolution,

7

modification or paternity petition to be final for purposes of appeal. *Archdekin v. Archdekin*, 562 S.W.3d 298, 305 (Mo. banc 2018). The circuit court's March 2, 2021 order of disposition does not satisfy this standard because, on its face, the court left for "future determination" a condition of its disposition that P.D.E. would be required to "pay restitution *in an amount to be determined*." (Emphasis added).

By leaving for future determination the amount of restitution that was ordered as a condition of the circuit court's disposition, the circuit court failed to finally determine P.D.E.'s disposition, and its order did not qualify as the "final judgment, order or decree" section 211.261.1 requires. An order of restitution is authorized by section 211.181.3, RSMo Supp. 2021, which provides how the circuit court may proceed after finding sufficient facts upon which to exercise jurisdiction over a child. Section 211.181.3, RSMo Supp. 2021, authorizes the court to "[p]lace the child under supervision in his or her own home or in the custody of a relative or other suitable person"; commit the child to the custody of "a public agency or institution", certain other institutions or entities, or the juvenile officer; order examination or treatment of the child's mental or physical health; suspend the child's driver's license; "[*o*]*rder the child to make restitution or reparation for the damage or loss caused by his or her offense*"; order the child to perform community service; and order the child to pay a monetary amount to the clerk of the court if the child was adjudicated to have violated a municipal ordinance or committed an act that would be

8

a misdemeanor or felony if committed by an adult.[4]  Section 211.181.3(1)-(9), RSMo Supp.

2021 (emphasis added).

---

[4] Section 211.181.3, RSMo 2016, provides:

> When a child is found by the court to come within the provisions of subdivision (3) of subsection 1 of section 211.031, the court shall so decree and make a finding of fact upon which it exercises its jurisdiction over the child, and the court may, by order duly entered, proceed as follows:
>
> (1)  Place the child under supervision in his or her own home or in custody of a relative or other suitable person after the court or a public agency or institution designated by the court conducts an investigation of the home, relative or person and finds such home, relative or person to be suitable and upon such conditions as the court may require; provided that, no child who has been adjudicated a delinquent by a juvenile court for committing or attempting to commit a sex-related offense which if committed by an adult would be considered a felony offense pursuant to chapter 566, including but not limited to rape, forcible sodomy, child molestation, and sexual abuse, and in which the victim was a child, shall be placed in any residence within one thousand feet of the residence of the abused child of that offense until the abused child reaches the age of eighteen, and provided further that the provisions of this subdivision regarding placement within one thousand feet of the abused child shall not apply when the abusing child and the abused child are siblings or children living in the same home;
>
> (2)  Commit the child to the custody of:
>
> (a)  A public agency or institution authorized by law to care for children or to place them in family homes;
>
> (b)  Any other institution or agency which is authorized or licensed by law to care for children or to place them in family homes;
>
> (c)  An association, school or institution willing to receive it in another state if the approval of the agency in that state which administers the laws relating to importation of children into the state has been secured; or
>
> (d)  The juvenile officer;
>
> (3)  Beginning January 1, 1996, the court may make further directions as to placement with the division of youth services concerning the child's length of stay.  The length of stay order may set forth a minimum review date;
>
> (4)  Place the child in a family home;
>
> (5)  Cause the child to be examined and treated by a physician, psychiatrist or psychologist and when the health or condition of the child requires it, cause the child to be placed in a public or private hospital, clinic or institution for treatment and care; except that, nothing contained herein authorizes  any  form  of  compulsory  medical,  surgical,  or  psychiatric

treatment of a child whose parents or guardian in good faith are providing other remedial treatment recognized or permitted under the laws of this state;

(6)  Suspend or revoke a state or local license or authority of a child to operate a motor vehicle;

*(7)  Order the child to make restitution or reparation for the damage or loss caused by his or her offense.  In determining the amount or extent of the damage, the court may order the juvenile officer to prepare a report and may receive other evidence necessary for such determination.  The child and his or her attorney shall have access to any reports which may be prepared, and shall have the right to present evidence at any hearing held to ascertain the amount of damages. Any restitution or reparation ordered shall be reasonable in view of the child's ability to make payment or to perform the reparation. The court may require the clerk of the circuit court to act as receiving and disbursing agent for any payment ordered;*

(8)  Order the child to a term of community service under the supervision of the court or of an organization selected by the court. Every person, organization, and agency, and each employee thereof, charged with the supervision of a child under this subdivision, or who benefits from any services performed as a result of an order issued under this subdivision, shall be immune from any suit by the child ordered to perform services under this subdivision, or any person deriving a cause of action from such child, if such cause of action arises from the supervision of the child's performance of services under this subdivision and if such cause of action does not arise from an intentional tort. A child ordered to perform services under this subdivision shall not be deemed an employee within the meaning of the provisions of chapter 287, nor shall the services of such child be deemed employment within the meaning of the provisions of chapter 288.  Execution of any order entered by the court, including a commitment to any state agency, may be suspended and the child placed on probation subject to such conditions as the court deems reasonable.  After a hearing, probation may be revoked and the suspended order executed;

(9) When a child has been adjudicated to have violated a municipal ordinance or to have committed an act that would be a misdemeanor if committed by an adult, assess an amount of up to twenty-five dollars to be paid by the child to the clerk of the court; when a child has been adjudicated to have committed an act that would be a felony if committed by an adult, assess an amount of up to fifty dollars to be paid by the child to the clerk of the court.

(Emphasis added).

In holding adjudication of the amount of restitution is not required for a final judgment of disposition, the principal opinion references section 211.185, RSMo 2016, which authorizes a judgment for restitution to be entered against the delinquent child and the child's parents. Section 211.185, RSMo 2016, provides no support for the principal opinion's holding adjudication of the amount of restitution is not required for an order of disposition to be final. Notably, that statute expressly provides for a proceeding independent of adjudication and disposition of the delinquency petition involving the child. Section 211.185.1, RSMo 2016, provides:

> In addition to the court's authority to issue an order for the child to make restitution or reparation for the damage or loss caused by his offense as provided in section 211.181, the court may enter a judgment of restitution against both the parent and the child pursuant to the provisions of this section if the court finds that the parent has failed to exercise reasonable parental discipline or authority to prevent the damage or loss and the child has:
> (1) Stolen, damaged, destroyed, converted, unlawfully obtained, or substantially decreased the value of the property of another; or
> (2) Inflicted personal injury on another, requiring the injured person to incur medical, dental, hospital, funeral, or burial expenses.

The civil "judgment of restitution" against a delinquent child and the child's parents may be enforced "in the same manner as enforcing monetary judgments" and may be executed against the child after the child reaches age 18. Section 211.185.7, .8, .11, RSMo 2016.

Section 211.185's different purpose and proceedings for entry of a civil restitution judgment against a delinquent child and the child's parents in no way informs dispositions proceedings under section 211.181, that may include payment of restitution or the finality of an order of disposition. Rather, it reinforces that a restitution order entered against the child under section 211.181, is part of the disposition in a delinquency proceeding that

11

must be finally resolved before an appeal is taken. *See Spire Mo., Inc. v. Mo. Pub. Serv. Comm'n*, 607 S.W.3d 759, 772 n.3 (Mo. App. 2020) ("It is a settled canon of statutory construction that, where different language is used in the same connection in different parts of an act, it is presumed that the legislative body intended different meaning and effect." (internal citations and quotation marks omitted)).

When a general civil judgment expressly reserves an issue for future determination, the judgment is not final or appealable until the reserved issue is fully and finally resolved. "[A] judgment that requires external proof or another hearing to dispose of disputed issues involved in the litigation is not final for the purposes of [appeal]." *Trust of Bornefield v. Kaemmerer*, 36 S.W.3d 424, 426 (Mo. App. 2001); *see also Comm. for Educ. Equality v. State*, 878 S.W.2d 446, 450 (Mo. banc 1994) ("[A] judgment that disposes of only one of several remedies and leaves other remedies relating to the same legal rights open for future adjudication is not a final judgment."). Particularly analogous to the unresolved issue in this case, judgments have been reversed for lack of finality when a defendant has been found liable but the amount of the defendant's financial liability remained unresolved. *See, e.g.*, *Estate of Jenkins v. Jenkins*, 648 S.W.3d 137, 139-40 (Mo. App. 2022) (dismissing appeal of probate judgment when the circuit court dismissed more than 95 percent of a probate claim, "except [the Funeral Expense,] which shall be set for hearing on June 23, 2021 at 10:30 a.m.") (alteration in original)); *Flower Valley, LLC v. Zimmerman*, 575 S.W.3d 497, 503 (Mo. App. 2019) (finding a judgment in a judicial review proceeding was not final when, "[a]lthough the trial court found Respondents were entitled to such [attorney] fees, the court stated the amount awarded would be determined at a later date");

12

*Team, Inc. v. Schlette*, 814 S.W.2d 12, 13-14 (Mo. App. 1991) (holding that a judgment finding defendant liable for breach of contract, but reserving determination of plaintiff's damages, was not appealable despite circuit court's certification of its liability ruling as a partial final judgment under Rule 74.01(b)).

The principle that a judgment is not final when the amount of a litigant's liability is unresolved should apply equally to the unresolved issue, here. The March 2, 2021 order of disposition lacks finality in the same way as the judgments in the cases cited above. It expressly states P.D.E. is responsible to pay an amount of money for the damages he caused but does not determine the amount. The circuit court's judgment was not final until the court's October 6, 2021 order setting the amount of restitution P.D.E. was ordered to pay. P.D.E.'s notice of appeal filed October 19, 2021, was timely.[5]

The principal opinion expresses concern that, if the March 2, 2021 order is not deemed "final" and appealable, this might delay appellate review of orders placing a

---

[5] The principal opinion notes that P.D.E. stated in his notice of appeal the issue to be raised on appeal regarded the order of restitution. That fact is irrelevant to resolution of the question of the timeliness of his appeal. The purpose of asking a litigant to list the "issues expected to be raised" in a notice of appeal is "to facilitate screening and docketing procedures" in the court of appeals. *Kahn v. Kahn*, 839 S.W.2d 327, 330 (Mo. App. 1992). Failing to list an issue as an "issue expected to be raised" in a notice of appeal does not limit or preclude review of that issue on the merits. *Id.* "Technical adherence to the formal averments of a notice of appeal is not jurisdictional . . . ." *L.J.B. v. L.W.B.*, 908 S.W.2d 349, 351 (Mo. banc 1995). In his appeal, P.D.E. was entitled to raise issues concerning not only the October 6 restitution order but also the circuit court's underlying adjudication of delinquency and its imposition of other dispositional measures in the March 2, 2021 order, because the March 2 order was interlocutory until made final on October 6. *See State ex rel. Koster v. ConocoPhillips Co.*, 493 S.W.3d 397, 401 (Mo. banc 2016) ("[A] final judgment necessarily incorporates all prior orders or judgments that adjudicated some – but fewer than all – of the claims and rights and liabilities of all the parties.").

13

juvenile in state custody while other dispositional matters remain unresolved. The principal opinion discusses the potential negative impact of a delay in hearing and adjudicating the amount of restitution before an order of disposition is final because a child would not be able to appeal other provisions in the disposition order until the amount of restitution is ordered. The principal opinion is correct the prompt resolution of petitions in juvenile cases benefits the juvenile. But even though the provision in section 211.181.3(7), authorizing the circuit court to hold a hearing regarding the amount of restitution may delay the entry of a final order of disposition in some cases, this Court cannot ignore the requirement in section 211.261.1 that a child can appeal only "a final judgment, order or decree" and, instead, authorize appeal of an order of disposition that does not finally dispose of all issues raised in the petition.

Section 211.181.3(7) only permits – it does not require – the circuit court to order the juvenile officer to prepare a report and hold a hearing. The legislature's authorization for additional process in section 211.181.3(7), if ordered, does not compel a lengthy delay. The circuit court should endeavor to adjudicate the amount of restitution without a prejudicial delay. Any delay caused by the court's desire to obtain additional information before ordering restitution or reparation for the damage or loss caused by the child's offense should be weighed against the prejudice caused by the resulting delay in the child's right to appeal. Weighing the need for additional information against delay of the child's right to appeal should also include consideration of a child's ability to pay restitution, which may be limited.

Section 211.261.1 unambiguously requires a "final judgment, order or decree," and the Court has no authority to disregard this finality requirement, no matter how benevolent its motives. As this Court has observed when enforcing other limits on the right to appeal under section 211.261, the General Assembly decides when an appeal can be taken in juvenile proceedings: "The right of appeal is statutory. . . . [T]his Court cannot invade the General Assembly's province to create a right of appeal where none exists." *J.I.S. v. Waldon*, 791 S.W.2d 379, 379 (Mo. banc 1990) (internal citation omitted).

## Conclusion

The application of well-established law to the facts of this case compels holding the circuit court's adjudication of the amount of restitution was necessary to disposition of all issues raised by the pleadings. It was not until the circuit court entered the October 6 order determining the amount of restitution that its orders of disposition were final. Because P.D.E. timely filed a notice of appeal from that order, his appeal was timely filed. Accordingly, I respectfully dissent from the principal opinion's dismissal of his appeal.

_____
PATRICIA BRECKENRIDGE, JUDGE

15